[L. A. No. 4975. Department One.—June 9, 1917.]

In the Matter of the Estate of. GUSTAV DREYFUS, Deceased. PHILIP HERBOLD and MAURICE BLUMLEIN, Appellants.

OLOGRAPHIC WILL—CANNOT BE IN TYPEWRITING OR PRINTING.—Section 1277 of the Civil Code, providing that an olographic will shall be "entirely written, dated, and signed by the hand of the testator himself," requires that the writing be with the hand of the testator by means of pen and ink or pencil of some description. No part of its contents may be in typewriting or printing, notwithstanding the same was done by the testator himself by the manipulation of a typewriting or printing machine.

APPEAL from an order of the Superior Court of Los Angeles County refusing to admit a document to probate as a will. W. H. Thomas, Judge.

The facts are stated in the opinion of the court.

Neighbours, Hoag & Burke, and M. J. Platshek, for Appellants.

SHAW, J.—Philip Herbold filed a petition for the admission to probate of a document, as the last will of the decedent, Gustav Dreyfus. The petition alleges that this paper was not attested by any witness, that it was wholly in typewriting, except the signature of the decedent thereto, that said signature was written by the decedent with pen and ink, and that the remainder of the document, including the proper date, was written by the decedent himself by the manipulation of a typewriting machine. The evidence was to the same effect. Thereupon the court below made its order refusing to admit the document to probate as a will. From this order the petitioner and said Maurice Blumlein, the latter being the sole beneficiary under the purported will, have appealed.

Our code requires that an olographic will shall be "entirely written, dated, and signed by the hand of the testator himself." (Civ. Code, sec. 1277.)

To ascertain the meaning of this requirement we must look to the reasons which led to its enactment, the conditions then existing, and the object sought to be attained thereby. Originally, in England, by the ecclesiastical law and the common law, wills could be made by oral declaration. (*Gould* v. *Safford*, 39 Vt. 505; *Ex parte Thompson*, 4 Bradf. Sur. (N. Y.) 154; *Harrington* v. *Stees*, 82 Ill. 50, [25 Am. Rep. 294]; 30 Am. & Eng. Ency. of Law, 560.) This was found to be so fruitful of fraud and perjury that the statute of frauds was enacted providing that nuncupative wills could be made only by persons in their last sickness, to be proved by three witnesses, or by soldiers in service or mariners at sea, and that in all other cases a will must be a signed writing, attested and subscribed by at least three credible witnesses. Statutes prescribing the manner of executing wills of all kinds and the degree of proof necessary to establish them have for their prime object the prevention of frauds and perjuries, or, as the supreme court of Louisiana puts it, "to prevent imposition and abuse." (*Knight* v. *Smith*, 3 Mart. O. S. (La.) 162.) Our code provision allowing olographic wills was first enacted in 1872. The commissioners who

drafted the Civil Code, in their note, recommend it on the ground that it "may not, and indeed, it is confidently claimed in those countries where olographic wills are recognized, does not give rise to as many attempts at fraudulent will-making and disposition of property as where it does not exist."

From time immemorial, letters and words have been written with the hand by means of pen and ink or pencil of some description, and it has been a well-known fact that each individual who writes in this manner acquires a style of forming, placing, and spacing the letters and words which is peculiar to himself and which, in most cases, renders his writing easily distinguishable from that of others by those familiar with it or by experts in chirography who make a study of the subject and who are afforded an opportunity of comparing a disputed specimen with those admitted to be genuine. The provision that a will should be valid if entirely "written, dated, and signed by the hand of the testator," is the ancient rule on the subject. There can be no doubt that it owes its origin to the fact that a successful counterfeit of another's handwriting is exceedingly difficult, and that, therefore, the requirement that it should be in the testator's handwriting would afford protection against a forgery of this character. In 1872 the only mode of writing in use was by pen and ink or pencil. There were then in existence some crude machines for imprinting letters on paper by means of small levers similar to those now used in typewriters, but the practical modern typewriter, now in almost universal use. was unknown. It was not perfected until 1875 and did not come into general use until several years thereafter. The language of section 1277, by the common usage of the language in 1872, or even at the present time, would mean that the entire will must be in the "handwriting" of the testator. This would not include any sort of printing by the use of type, whether on a printing-press or placed at the end of a rod manipulated by keys.

While it is true that a will made wholly by the testator and by means of a typewriter may be said to have been made "by the hand of the testator himself," it would not be true, accurately speaking, that such a will had been "written" by him. The process of making letters on paper with a typewriter is essentially a process of printing. The type fixed on a bar is stained with ink and then pressed against the paper, leaving its imprint precisely as in a printing-press. The

word "written" as used in section 1277, in the year 1872, had no such signification. There are cases where a word in a statute aptly describing a thing then well known has been extended so as to include some other thing afterward invented or used to accomplish the same or a similar purpose and within the general statutory intent and object. For example, "carriage," meaning a wheeled vehicle, has been held to include the subsequently invented bicycle. But the reasons for these extensions of meaning have no application here. They were made to carry out the spirit and object of the statutory provision. The meaning here contended for would greatly enlarge the opportunities for successful forgeries by taking away the means of detection which the legislature had in mind and would defeat the purpose of the statute by destroying the safeguards which its requirements were designed to secure.

The order is affirmed.

Sloss, J., and Victor E. Shaw, J., *pro tem.,* concurred.

Hearing in Bank denied.