[S. F. No. 9187. In Bank.—August 12, 1920.]

In the Matter of the Estate of S. F. THORN, Deceased. EMMA S. THORN, et al., Appellants, v. CALIFORNIA ACADEMY OF SCIENCES, Respondent.

[1] ESTATES OF DECEASED PERSONS—OLOGRAPHIC WILL—COMPLIANCE WITH SECTION 1277, CIVIL CODE.—Compliance with the requirements of section 1277 of the Civil Code is essential to the validity of a document as an olographic will, namely, that it be entirely written, dated, and signed by the hand of the testator himself.

[2] ID.—DESCRIPTION OF DEVISED PROPERTY—USE OF RUBBER STAMP—INVALID OLOGRAPHIC WILL.—A document of a testamentary character wholly in the handwriting of the deceased except the name of a park inserted in two places with a rubber stamp as a part of the description of land devised is not a valid olographic will, notwithstanding the property was sufficiently identified without the stamped words.

[3] ID.—SUFFICIENCY OF DESCRIPTION WITHOUT USE OF STAMPED WORDS—IMMATERIALITY.—Words deemed by the testator himself essential to a description of the property devised and inserted by him or under his direction as a part of such description in the dispositive clause of the will devising the property constitute a part and parcel of the will itself, notwithstanding that evidence might show the property to be sufficiently identified without the presence of such words.

[4] ID.—RUBBER-STAMP IMPRESSIONS—PART OF EXECUTION OF WILL.—The insertion by a testator of words of description with a rubber stamp in spaces left by him for that purpose is not an interlineation, alteration, or addition subsequent to execution as a completed will, but is a part of the making of the will.

APPEALS from orders of the Superior Court of the City and County of San Francisco admitting to probate a certain document as an olographic will and denying the application of the nominee of the surviving wife for letters of administration. John T. Nourse, Judge. Reversed.

The facts are stated in the opinion of the court.

---

1. Formal requisites of olographic wills, note, 104 Am. St. Rep. 22. Violation of requirement that olographic will shall be written by testator, notes, 1 Ann. Cas. 373; 20 Ann. Cas. 369; 26 L. R. A. (N. S.) 1145; L. R. A. 1917F, 393.

Morrison, Dunne & Brobeck and J. F. Shuman for Appellants.

Goodfellow, Eells, Moore & Orrick for Respondent.

ANGELLOTTI, C. J.—We have here appeals from orders admitting to probate a certain document as the olographic will of deceased and denying the application of the Mercantile Trust Company, the nominee of the surviving wife, for letters of administration.

The claim of appellants is that the document is not a valid olographic will, for the reason that it is not "entirely written, dated, and signed by the hand of the testator himself," as required by section 1277 of the Civil Code. It was so dated and signed, and was otherwise in the handwriting of the deceased with the exception of certain words in the following paragraph of the document:

"To this society [California Academy of Sciences] I leave
*Cragthorn Park*
my country place *Cragthorn* consisting of 241 64/100 acres located about 1¼ mile below Glenwood and about 9¼ miles from the City of Santa Cruz in Santa Cruz County, State of California in Sec. 6 Town. 10 S. Range 1 West. I paid $3300.00/100 for it in 1883, title U. S. Patent Recorded and I attach a memo. herewith advising the Academy as to what they may do with it. . . . Balance of my estate and personal property I leave to Academy of Science toward a fund to improve or care for Cragthorn Park."

In this portion of the document the word "Cragthorn" was in two places inserted with a rubber stamp instead of being written by the deceased, being the places where we have italicized the word, and the word "Park" immediately following one of these words was in the handwriting of the decedent. A memorandum attached to the document, admitted to probate as a part thereof read:

"To the Academy:

"Gentlemen: Don't sell Cragthorn Park at a cheap price as it is susceptible of several propositions and values. . . . Cragthorn has water higher up for the Res or Club House."

Evidence adduced on the hearing showed that decedent owned property in Santa Cruz County known as Cragthorn

Park. The trial court admitted the document to probate as the last will of decedent, with the exception of the stamped words "Cragthorn," and the written word "Park" following one of the stamped words "Cragthorn."

Of course, the intent of the deceased is obvious. He was endeavoring to make a valid olographic will, and the manner in which he desired his property to go is clearly specified. Nor can there be a suspicion as to the genuineness of the document. But all this is beside the question. We are confronted here with the question whether in this document there has been that substantial compliance with the mandatory requirements of our statutes relative to the execution of wills that is absolutely essential to the existence of a valid will. (See *Estate of Carpenter,* 172 Cal. 268, 269, [L. R. A. 1916E, 498, 156 Pac. 464].) There being no witnesses to the execution of the document here involved, it can be sustained only on the theory that it is an olographic will. By section 1277 of the Civil Code an olographic will is defined as follows: "An olographic will is one that is entirely written, dated, and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this state, and need not be witnessed." [1] This court has uniformly held that compliance with the requirements of this section is essential to the validity of a document as an olographic will, viz.; that it be *entirely* written, dated, and signed by the hand of the testator himself. In holding that a date was essential the court said in *Estate of Martin,* 58 Cal. 530, 533: "We are not at liberty to hold that the legislature intended any one of these requirements to be of greater or less importance than the others. If we may omit one why not either of the others?" In *Estate of Billings,* 64 Cal. 427, [1 Pac. 701], where the date was only partially in the handwriting of the deceased, who had used a letterhead with the year designated in printing, the court said: "It must be entirely written, it must be entirely dated, and it must be entirely signed by him. If it be partly written by him and partly written by another, or printed; if it be partly dated or signed by him and partly by another, it is not a compliance with the statute." In *Estate of Rand,* 61 Cal. 468, [44 Am. Rep. 555], the deceased had used a stationer's blank, with the result that the paper was partly printed and partly in the handwriting of the deceased. The

court said: "The paper before us was not entirely written by the hand of the deceased. Portions of it were printed. The legislature has seen fit to prescribe forms requisite to an olographic will, and these forms are made necessary to be observed. It was strenuously urged before us that the portions of the paper which were written by the deceased should be admitted to probate, omitting the printed portions. We are not at liberty to so hold. We should thereby, in effect, change the statute, and make it read that such portions of an instrument as are in the handwriting of the deceased constitute an olographic will. The instrument, in its entirety, is before us. It was not entirely written by the hand of the deceased." The views expressed in the decisions cited have never been departed from. (See *Estate of Plumal,* 151 Cal. 77, [121 Am. St. Rep. 100, 90 Pac. 192]; *Estate of Vance,* 174 Cal. 122, [L. R. A. 1917C, 479, 162 Pac. 103].) *Estate of Soher,* 78 Cal. 477, [21 Pac. 8], is not at all opposed to these views. There an attestation clause in another's handwriting was properly held not to be a part of the will. **[2]** In view of the decision in *Estate of Dreyfus,* 175 Cal. 417, [L. R. A. 1917F, 391, 165 Pac. 941], where it was held that a will made wholly by the deceased by means of a typewriter was not a valid olographic will, it is clear that words stamped with a rubber stamp cannot be held to be "written . . . by the hand of the testator himself." If the words "Cragthorn" stamped with a rubber stamp upon this document, or either of them, constitute a part of the attempted will, it seems obvious that the will is not "entirely written by the hand of the testator himself," and therefore does not measure up to a mandatory requirement of the statute.

Two contentions are made by learned counsel for respondent in reply to appellant's position in this behalf. One of these claims is that, assuming these words to constitute a part of the will, they are wholly surplusage, the property referred to thereby being sufficiently identified without them, with the result that they do not in any way add to, alter, contradict, or cloud the meaning or the intent of the deceased and were not necessary to complete the document as an olographic will. It may be conceded that the property is sufficiently identified without the inclusion of these stamped words, and that the meaning of the attempted will is the same without them as

with them. But in view of the question before us, this consideration appears to be altogether immaterial. We are called upon to decide simply whether the purported olographic will has been executed in accord with the mandatory requirements of the law, and if not so executed we must hold it invalid. One of those requirements is that it must have been "*entirely*" written" by the hand of the testator, which necessarily means that every word must be so written, for unless every word is so written, the will is not "*entirely*" written by the hand of the testator. **[3]** We know of no rational theory upon which it can be held that words deemed by the testator himself essential to a description of the property devised, and inserted by him or under his direction as a part of such description in the dispositive clause of the will devising the property, do not constitute part and parcel of the will itself, notwithstanding that evidence might show the property to be sufficiently identified without the presence of such words. We have been referred to but one decision which is contrary to the view we have expressed, viz., the case of *McMichael* v. *Bankston*, 24 La. Ann. 451, where the will was entirely written, dated, and signed by the testator with the exception of the word "to" and the word "acres" in the dispositive part of the will, and it was held that the validity of the will was not impaired by the fact that these words were in another's handwriting, inasmuch as the meaning of the will was the same without them as with them. The Louisiana case was approvingly cited in *Baker* v. *Brown*, 83 Miss. 793, [1 Ann. Cas. 371, 36 South. 539], where the words "my will" at the top of the writing, the only words not in the handwriting of the deceased, were very properly held to constitute a mere caption and not to constitute any part of the will proper, the will following below these words and being in all respects in accord with the requirements of the law. The learned court, however, also based its decision on *McMichael* v. *Bankston*, expressly approving the doctrine thereof. We are satisfied that these decisions cannot be followed here in view of the mandatory requirements of our statute and the decisions relative thereto, to which we have already referred. The statements in 30 Am. & Eng. Ency. of Law, page 552 and Page on Wills, section 230, relied on by respondent, are based solely on the decision in *McMichael* v. *Bankston*, *supra*, to which they refer. Where the

matter not in the handwriting of the deceased may fairly be concluded not to constitute part of the date or the will itself, undoubtedly it may be held not to invalidate the will, but it cannot fairly be said, however liberal the construction in which we indulge, that a portion of a dispositive clause of the will may be disregarded upon the plea that it is not a part of the will.

The remaining claim of respondent is based upon the contention that the impressions with the rubber stamp were made subsequent to the execution of the will, and for that reason constitute no part thereof and may be disregarded. The trial court substantially found, it is said, that the document *without* these stamped words and the written word "Park" following one of them constitutes the will of deceased, and it is urged that in certain alleged presumptions and inferences from the document itself is to be found sufficient support for this finding, which, it is contended, includes the conclusion that the rubber-stamp impressions were made after the execution of the will and were consequently not a part thereof. The only direct evidence touching on this matter was that furnished by the document itself, and stipulations of the parties that the document was found in the safe deposit box of the deceased in the safe deposit vaults of the Crocker National Bank of San Francisco and that if a certain witness was called he would testify that this box was opened in his presence shortly after the death of deceased and this document found therein, and that the manager of the vaults, if called, would testify that "as appears from his records no one other than S. F. Thorn ever had the right of access to said box and so far as he knows from his records no one other than S. F. Thorn ever visited said box or removed any contents therefrom during the lifetime of S. F. Thorn."

It is established by this evidence that the document was produced from the custody of the deceased in the condition in which it was filed for probate. That the insertion of the word "Cragthorn" by a rubber stamp in the two places was made by the deceased is made clear by the fact that the word "Park" following the "Cragthorn" placed above the line is in his handwriting, which also indicates that the impressions were made after the writing of the word "consisting." The space left between the word "place" and the word "consisting" in which the word "Cragthorn" was stamped was

obviously designedly left by the testator for the insertion of
a word or words which he deemed essential to his will, and
intended to insert as a part of the will. The second impres-
sion above, followed by the written word "Park," was
probably made, as is suggested by respondent, because it was
discovered that the space was insufficient in length for the
two words "Cragthorn Park." Whether the stamping was
actually done before the writing was completed and the sig-
nature appended it is impossible to know, but it is plain
from the leaving of the space and the subsequent insertion
of the stamped words that the deceased at all times intended
the stamped words to be a part of his will and regarded
the will as incomplete until such words were inserted, and
that such insertion was made by him *as a part of the mak-
ing of the will.* If this was the situation, and we think no
other inference may reasonably be drawn from the showing
made by the document itself, it would be immaterial just
when in the course of the making of the will the deceased
filled in the space left to be filled by a designation of the name
of the country place devised to respondent. Whenever filled
in, whether before or after signature, the act was a part of
the actual making of the will as designed by the deceased,
and not an alteration in or attempted addition to a com-
pleted will already executed. In this view of the case, the
statement near the close of the document, "This is my hand-
writing (an olographic will)," relied on by respondent as
justifying an inference that the stamped words were not
inserted prior to signature, is of no importance, but in no
event do we think they would warrant any inference as to
whether the stamped words were inserted prior to the signa-
ture. An exhaustive argument is made by learned counsel
for respondent in support of the proposition that there is a
presumption of law that all interlineations, alterations, or
additions appearing on the face of a will were made after
execution. This proposition is earnestly combated by counsel
for appellants, and the authorities appear to be in conflict
on the proposition. [4] We deem it unnecessary to decide
this question here, for the reason that the insertion of the
stamped words and the written word "Park" was not an
interlineation, alteration, or addition within the meaning of
the rule as declared by the authorities relied on by respond-
ent. It was simply the filling in of a space apparently left

to be filled as a part of the original making of the will.   This was certainly true of the word "Cragthorn" stamped on the line in the space.   We cannot see that any of the authorities cited sustains the claim of respondent that in view of the showing made by this document there is a presumption that the rubber-stamp impressions were made subsequent to its execution as a completed will.   For the reasons we have stated, we are forced to the conclusion that any finding of the trial court to the effect that the rubber-stamp impressions were not a part of the will is without sufficient support in the evidence.

In view of what we have said we are satisfied that it must be held that the alleged will was not executed in accord with the mandatory requirements of our statute, and is for that reason invalid.

The orders appealed from are reversed.

Shaw, J., Lawlor, J., and Olney, J., concurred.

Rehearing denied.

All the Justices concurred, except Lawlor, J., and Sloane, J., who did not vote.