[S. F. No. 12363. Department Two.—May 11, 1928.]

SOLOMON GARDE, Appellant, v. SYBIL E. GOLD-SMITH, Respondent.

Goldman & Altman and Samuel R. Stern for Appellant.

H. U. Brandenstein for Respondent.

LANGDON, J.—Appeal by plaintiff from a judgment against him entered upon sustaining a demurrer to the first count of his amended complaint. He was given leave to amend the second count of said complaint, but declined to do so and withdrew the claim made thereunder.

The action was brought upon the following letter, written by Simon L. Selling to the defendant, his niece, and handed to plaintiff in a sealed envelope, to be placed in the writer's safe deposit box to be opened after his death:

"Tacoma, Wn., Sept. 24, 1923.

"Sept. 24, 1923.

"Sybil E. Lippitt (Lippitt).

"San Francisco, Cal.

"I desire that you pay to Solomon Garde (Solomon Garde) of Seattle, Wn., the sum of $20,000 Twenty Thousand Dollars, and to come from amount I have invested at present in Crown Columbia Pulp & Paper Co., such sum to be paid after my sister's Rose Selling's death.

"Carrie out this wish in full

"SIMON L. SELLING.

"I have no witness—I know you will fulfill my wish."

(Reverse side of instrument:)

"Crown Columbia Pulp & Paper Co. Bonds or other securities issuing from amount bought from Bonds that amount came from original amount that came or was procured from amount that I purchased from amount Crown Willamette Pulp & Co. Paper Bonds.

"SIMON L. SELLING."

Prior to writing the foregoing letter, and in 1918, Simon L. Selling had executed a last will and testament and on July 26, 1923, had executed a codicil. These instruments made substantial bequests, among others, to plaintiff and his wife and daughter, and created a trust for the benefit of testator's sister for life and left the *residuum* of the estate to the defendant herein, a niece of testator.

Within a few months after writing the letter above quoted, Simon L. Selling died and his sister, Rosa Selling, died one month later. After her death plaintiff claimed to be entitled to $20,000 under the letter written by Selling. In brief, the foregoing is the situation disclosed by the com-

plaint; and it would seem that the demurrer was properly sustained.

The instrument relied upon has no force as a testamentary disposition. It is not executed with the required formalities to stand alone, and it could not become a part of the will and codicil previously executed. ■ An extraneous document cannot affect the terms of a will or in any way restrict testamentary succession to property, unless the document is in existence when the will is made and is so clearly identified in the will itself as to become a part of the will. · (*Estate of Shillaber*, 74 Cal. 144, 146 [5 Am. St. Rep. 433, 15 Pac. 453]; *Estate of Young*, 123 Cal. 337, 342 [55 Pac. 1011]; *Estate of Plumel*, 151 Cal. 77, 81 [121 Am. St. Rep. 100, 90 Pac. 192]; *Estate of Doane*, 190 Cal. 412, 414 [213 Pac. 53].)

■ It is apparent that the instrument in question did not constitute a gift of the money or bonds, either *inter vivos* or *causa mortis*. The only other aspect of plaintiff's case is the trust theory. It is apparent that no trust was created at 'the time the instrument was written. It was not to be opened until the death of Selling; it did not purport to create a present equitable title in plaintiff. No part or parcel of the title to the money or bonds was parted with by Selling during his lifetime; the letter written by him is entirely testamentary in character. Upon Selling's death, by reason of the will and codicil, the title to the property became vested in the defendant. There was no consideration to support a trust for plaintiff in the property. The letter of Selling imposed but a moral obligation upon the defendant, and its language indicates that Selling understood this and appealed to her to carry out his wish as he had "no witness."

The judgment is affirmed.

Richards, J., and Shenk, J., concurred.