[L. A. No. 16775.   In Bank.—August 25, 1939.]

In the Matter of the Estate of HELEN M. TOWLE, Deceased. JOSEPHINE IRVING, Special Administratrix, etc., et al., Respondents, v. SCRIPPS MEMORIAL HOSPITAL (a Corporation) et al., Appellants.

Hillyer & Boldman and Bertrand L. Comparet for Appellants.

Arthur H. DeRiemer, Charles A. Brinkley, Gray, Cary, Ames & Driscoll and Burton D. Wood, for Respondents.

CURTIS, J.—This is an appeal from a judgment refusing to admit to probate two documents which were offered for probate as the holographic wills of Helen M. Towle, deceased, by the public administrator of the county of San Diego, of which county the decedent was a resident at the time of her death. No question is raised as to the correctness of the judgment in so far as it denied probate to the earlier will, dated May 21, 1932, which was denied probate upon the ground that it had been revoked by the express revocatory clause contained in the later instrument, dated September 19, 1933. But the correctness of the judgment in so far as it denied probate to the later document, dated September 19, 1933, has been challenged on appeal by Scripps Memorial Hospital and Fine Arts Society of San Diego, two of the charitable corporations named as residuary legatees in said purported holographic will. Respondents are cousins of the decedent who will be entitled to inherit property in California of the approximate value of $60,000 in the event the decedent died intestate.

263

The document, as filed in the office of the county clerk of San Diego county, with the interlineations and alterations, is in the words and figures as follows:

"Oak Park, Illinois—Sep. 19—1933.

I, Helen M. Towle, of ~~La Jolla, San Diego Co., Calif.~~ declare the following to be my last will and testament, revoking all former wills made by me.

1st: I direct that all my debts and funeral expenses be paid.

2nd: I give to my Counsin, Carrie L. Towle, *Mishawaka, Ind.* the sum of five thousand dollars ($5000). In case she dies before I do, this sum shall be given to her sister, Mary M. Towle. *for* *Mish or in trust (2+3) reside to legal heirs*

3rd: I give to my cousin Mary M. Towle, the sum of five thousand dollars ($5000).

4th: I give to my cousin Herbert C. Towle *nephew* *(nephew of Mary)* *Jackson Mich* the sum of five thousand dollars ($5000). If he should die before I do and leave surviving him his son Herbert C. Towle, Jr., I give to Herbert C. Towle, Jr., said sum of $5000 and direct that it be held in trust for him by my executor and *income for his use* trustee until he reaches the age of twenty-five years, or else expended for his support and edu- *prin + inc* cation.

If neither Herbert Sr. nor Herbert Jr. should survive me, said sum shall revert to my estate.

5th: I give to my cousin Margaret Towle Edris the sum of twenty-five hundred dollars *EDRIS* *South Bend* ($2500=). In case she does not survive me this sum is to revert to my estate.

6th: I give to my friend Helen Barton Stilwell *BARTON STILWELL* the sum of ~~twenty-five hundred dollars ($2500).~~ *$1000* *New York City*

7th: I give to my friend Helen Kellogg, of *To* La Jolla, Calif. the sum of one thousand dollars ($1000)

8th: I give to my friend Charlotte Earle the *EARLE* *Oak Park* sum of one thousand dollars ($1000)

9th: I give to my friend Edith Ames English *Pasadena* *EDITH AMES* the sum of one thousand dollars ($1000)

10th: I give to my friend Laura C. Morey *na* *reay* the sum of one thousand dollars ($1000)

11th: I give to my friend Frances P. Elliott *San Diego* *Frances Elliott* the sum of one thousand dollars ($1000)

12th: I direct that my personal effects be distributed among my friends and relatives named in a letter enclosed.

13th: All the rest of my estate I give to the following institutions, in the following proportions:

1/4th (one fourth) to Northwestern University to be used for the benefit of its Law School in memory of my father. *as Bd shall determine* *HENRY SARGENT TOWLE* 3/4 The rest to be divided evenly among Scripps Memorial Hospital located at La Jolla, Calif., for *Free Bed* *Wesley* the benefit of its Free Bed Fund; Wesley Memorial Hospital located in Chicago, Ills., to be used for its Free Bed Fund, in memory of my Father, and the San Diego Art Museum located in Balboa Park for the purchase of works of art

14th. I appoint the ~~Northern Trust Co., of Chicago, Ills.~~ the executor and trustee of my *under* will to take full charge of my estate and manage it according to their best judgment.

Realizing that it is difficult to sell securities and real estate because of the depression, I ask them to take sufficient time to avoid sacrificing what might become more valuable within a year or two.

However, I would like to have the bequests to my cousins paid as soon as possible. *rest in* *cash or kind* *(Mary + Cary to have cash as soon as possible.*

Helen M. Towle.

*I am cognizant of the fact that I have ... the first ... second cousins, not mentioned in this will. I have purposely not made such cousins beneficiaries of my estate, as it is not my desire or wish that they share in my said estate."*

With the exception of the cancellation of the words, "twenty five hundred dollars ($2500)" in the sixth paragraph of said document in the bequest to Helen Barton Stilwell, which cancellation was made by the testatrix herself, and the insertion of the figure, "$1000" above said cancellation by said testatrix, all the other interlineations, cancellations and additions were made by Mr. Chester D. Seftenberg, vice-president and trust officer of the Oak Park Trust & Savings Bank of Oak Park, Illinois. The cancellation of the words, "La Jolla, San Diego Co. Calif," and the cancellation of the paragraph in which the Northern Trust Co. of Chicago, Illinois was named as executor and trustee, were made by Mr. Seftenberg in black ink. The last paragraph which followed the signature of Helen M. Towle was written in by Mr. Seftenberg in pencil. The other interlineations and changes were made by him in red ink. No particular significance arises from the fact that in one instance Mr. Seftenberg used a pencil, or that he used different colored ink in making the changes.

The evidence with reference to these cancellations and interlineations is embodied in the deposition of Mr. Seftenberg, and is accepted by both sides as being a true and accurate account of the circumstances under which these cancellations and interlineations were made. According to the deposition of Mr. Seftenberg, Helen M. Towle came into his office at the bank in Oak Park, Illinois, on October 10, 1934, for the purpose of having him prepare a formal will for her. She had with her a document which was at that time entirely written, dated, and signed in her own handwriting, and which the probate court found was, on the date of its execution, a valid testamentary disposition of her property. She told Mr. Seftenberg that this was a temporary will and that the distribution of the property as set forth therein with a few modifications of detail was satisfactory to her. She also explained that her father had been an attorney and she was somewhat conversant with legal forms and phraseology, and that she understood a will entirely written, dated, and signed by a testator was valid as an holographic will. Mr. Seftenberg informed her that neither he nor the bank prepared wills, but offered to recommend an attorney to her who would handle the matter for her. He also offered to assist her in the preparation of her will by

preparing a memorandum of suggestions as to her desired scheme of distribution for submission to her attorney. They then sat down at an office desk in his office, he on one side of the desk and she on the other side, and discussed the provisions of her will. Using the holographic will which she had brought with her as the basis of the memorandum, he proceeded to make the cancellations and interlineations in said document which now appear thereon. His testimony is that he read over the document with her and as they took up each separate paragraph, he wrote the words and figures appearing thereon in his handwriting. It was during this conference that Helen M. Towle changed the bequest to Helen Barton Stilwell from $2,500 to $1,000, but it does not appear from Mr. Seftenberg's deposition whether she made the change prior to the time he made any changes in the document, or subsequent thereto. Many, if not most, of the interlineations made by Mr. Seftenberg were made simply for the purpose of clarifying the handwriting of the decedent and to make more certain the spelling of the proper names. Certain definite changes were, however, made by him in the provisions of the will. Thus, the provision whereby the Northern Trust Company of Chicago, Illinois, was nominated by the testatrix as her executor, was deleted by Mr. Seftenberg with the consent of the testatrix, with the idea of substituting the Oak Park Trust & Savings Bank in lieu thereof. Also the bequest to her cousin, Carrie L. Towle, which had theretofore been an outright gift to her cousin of $5,000 was changed to a bequest to Mary M. Towle in trust for the benefit of Carrie L. Towle. As Helen M. Towle was leaving Oak Park, Illinois, in a few days on a trip, Mr. Seftenberg offered to deliver said document with its interlineations, changes, and additions, to an attorney, to be used by the attorney as the basis for her proposed formal will. Mr. Seftenberg did turn the document over to an attorney who did prepare a formal will in accordance with the terms and provisions of said document as modified by the changes, interlineations and additions contained therein. Said will was never executed by Helen M. Towle, for the reason that after further discussing the matter with Mr. Seftenberg, she decided to execute, and the following day, did execute, a declaration of trust whereby she conveyed to the Oak Park Trust & Savings Bank, in trust, all property owned by her

in Illinois, which was of the approximate value of $150,000. The property which she owned in California was not included in the trust document, and it is this California property, of the approximate value of $60,000, which is the subject of the controversy involved in this appeal. It was decided at said time that she would dispose of her California property by a formal will wherein she would devise and bequeath said California property to the Oak Park Trust & Savings Bank, as trustee, to be distributed by said bank in accordance with the plan of distribution embodied in her declaration of trust. Such a will was prepared for her signature, but she died very suddenly and unexpectedly in Canada before said will was executed by her. The original document now presented for probate as the holographic will of Helen M. Towle was never returned to her, but after her death, was taken from the files of the Oak Park Trust & Savings Bank and forwarded to the clerk of the superior court of San Diego County.

It should be noted that the property conveyed by the decedent in the declaration of trust consisted of her Illinois property which was the bulk of her estate, but did not include the property owned by her in California. The declaration of trust contained identical provisions with reference to the bequests to friends and relatives as had been contained in her holographic will as modified by the interlineations, cancellations and additions, and the residue was likewise divided in the same proportions among the charitable corporations as it had been divided in her holographic will as modified. Due, however, to the fact that the holographic will made disposition of her entire estate, and the declaration of trust only provided for distribution of her Illinois property, it is apparent that the results of said identical scheme of distribution were not the same in so far as the residuary legatees were concerned. If the decedent had executed the formal will prepared for her by her attorney for the purpose of providing for the distribution of her California property prior to her death, the result would then have been the same.

The sole controversy involved in this appeal is the question of whether the probate court erred in refusing probate to the document, dated September 19, 1933, which when it was presented for probate was partially in the handwriting of

Helen M. Towle, deceased, and partially in the handwriting of Chester D. Seftenberg.

The probate court as the basis of its judgment expressly found that, "It is not true that said instrument . . . was at the time of the death of said Helen M. Towle as aforesaid her last will and testament; that it is not true that at said time the said instrument was entirely written, dated and signed by the hand of the said Helen M. Towle; that it is true that at said time there were upon said instrument interlineations, additions and changes, incorporated in the provisions thereof not written by the hand of the said Helen M. Towle, but theretofore placed thereon and incorporated therein by the hand of another in the presence of and with the acquiescence and consent and at the direction of the said Helen M. Towle."

We do not think that this finding, which is supported by the undisputed evidence of Chester D. Seftenberg, embodied in his deposition, nor the judgment predicated thereon, can be successfully challenged.

█ It is elementary that a document, holographic in form, to be effective as a valid testamentary disposition of a testator's property, must strictly fulfill the mandatory requirements of section 53 of the Probate Code. (*Estate of Rand,* 61 Cal. 468 [44 Am. Rep. 555] ; *Estate of Billings,* 64 Cal. 427 [1 Pac. 701] ; *Estate of Plumel,* 151 Cal. 77 [90 Pac. 192, 121 Am. St. Rep. 100] ; *Estate of Dreyfus,* 175 Cal. 417 [165 Pac. 941, L. R. A. 1917F, 391] ; *Estate of Thorn,* 183 Cal. 512 [192 Pac. 19] ; *Estate of Bernard,* 197 Cal. 36 [239 Pac. 404] ; *Estate of Bower,* 11 Cal. (2d) 180 [78 Pac. (2d) 1012].)

Section 53 of the Probate Code reads as follows:

"A holographic will is one that is entirely written, dated, and signed by the hand of the testator himself. It is subject to no other form, and need not be witnessed. No address, date or other matter written, printed or stamped upon the document, which is not incorporated in the provisions which are in the handwriting of the decedent, shall be considered as any part of the will."

Does the document offered for probate meet these statutory requirements? The answer must be, No. It is conceded by appellants, as indeed it must be, since it is self-apparent, that cancellations, interlineations and additions in the hand-

writing of a person other than Helen M. Towle, appear upon the face of the document.  It is true that if someone, unknown to the testatrix and without her authority, had marked up decedent's will, said instrument, as originally executed by the testatrix and with said alterations deleted, would be entitled to probate. (*Musgrove* v. *Holt*, 153 Ark. 355 [240 S. W. 1068].)  But no claim is made in the instant case that these marks, interlineations and additions were placed on said instrument without the knowledge and consent of the testatrix.  Of course, no such claim could be successfully made, since the evidence is undisputed that these marks, interlineations and changes were made by Mr. Seftenberg in the presence of the testatrix and with her knowledge and consent, and that whatever cancellations and interlineations were made which changed the terms and provisions of the original holographic will, expressed the testatrix's own ideas and wishes.  In view of these uncontradicted facts, we are convinced that no amount of argument can offer escape from the simple, basic fact that the document presented for probate was not entirely written, dated and signed by the hand of the testatrix herself.  The instrument, therefore, is not entitled to probate.

 Despite the admitted fact that the document presented for probate was not entirely written, dated and signed by the testatrix, it is argued that the concluding sentence of section 53 of the Probate Code saves it from being ineffective as a valid testamentary disposition of the property of the testatrix.  Said sentence provides that, ''No address, date or other matter written, printed or stamped upon the document, which is not incorporated in the provisions which are in the handwriting of the decedent, shall be considered as any part of the will.''  There can be no question that the interlineations and cancellations made by Mr. Seftenberg were made by him in order to express the plan and wishes of the testatrix, and were intended by her to be incorporated in the terms of her formal will when drawn.  A mere cursory glance at the face of the instrument demonstrates the truth of this assertion.  It is difficult to conceive of any document in which the intent to incorporate the additional words and figures therein written would be more patent.  It is insisted by appellants, however, that no writing or printing can be ''incorporated'' by a stranger, but must be incorporated by

the testatrix herself. It is further argued that no printing or writing can be "incorporated" by the testatrix unless it was in existence at the time of the execution of the holographic will. It is apparent that this latter argument is attempting to read into said provision of the Probate Code the technical requirements of the doctrine of incorporation by reference. (*Estate of Doane,* 190 Cal. 412 [213 Pac. 53] ; *Garde* v. *Goldsmith,* 204 Cal. 166 [267 Pac. 104] ; *Estate of Miller,* 128 Cal. App. 176 [17 Pac. (2d) 181].) In view of the fact that this sentence was added to said code section for the purpose of making said code section conform to the holding in *Estate of De Caccia,* 205 Cal. 719 [273 Pac. 552, 61 A. L. R. 393], and the *Estate of De Caccia, supra,* in no way involves the doctrine of incorporation by reference, which relates to the incorporation of a separate extrinsic document already in existence by appropriate reference thereto by a testator in a will, we find no merit in this argument.

There can be no question that said sentence was added to said code section to codify the holding in *Estate of De Caccia, supra.* The note by the code commissioners to section 53 of the Probate Code said: "The last sentence is new: 205 Cal. 719," which citation is the citation of the *Estate of De Caccia, supra. Estate of Bower, supra,* expressly states that this sentence was added to the code section to codify the rule announced in the De Caccia case. Evidently, therefore, this provision was intended to apply to situations similar to that presented in *Estate of De Caccia, supra.* The holding in that case was to the effect that the mere presence of printed words upon the stationery used by a person for the purpose of writing his holographic will, but not intended by said person to form any part of his will, did not destroy the effect of the instrument as an holographic will, but was extraneous matter which could be considered nonexistent in so far as the holographic will was concerned. It follows, therefore, that this provision of section 53 of the Probate Code, which is intended to apply to certain instruments of the character of the one involved in the De Caccia case, was never intended to apply to a situation such as here involved, wherein the interlineations, changes and additions were made by a stranger subsequent to the original execution of the will, but with the consent and acquiescence of the testatrix, and to express her ideas and wishes.

We do not believe that the question of the validity of the holographic will here involved depends upon a determination of the sequence of time in which the changes were made by the testatrix or by Mr. Seftenberg. It has been held that the making of any alteration or interlineation by a testator in his original holographic will in his own handwriting constitutes a reexecution and republication of such instrument and it is entitled to probate as altered. (*Estate of Finkler*, 3 Cal. (2d) 584, 600 [46 Pac. (2d) 149].) Regardless of whether or not the change made by the testatrix was made prior to any changes made by Mr. Seftenberg, or was made in the order in which said paragraph was reached during the discussion, or after the marks upon the document had been completed by Mr. Seftenberg, the changes so made were made as part and parcel of the same transaction, and the testatrix undoubtedly intended the finished product of the discussion, that is to say, the document as changed and interlined by both herself and Mr. Seftenberg, to express her wishes as to the final disposition of her property. (*Estate of Thorn, supra.*) If, therefore, there was a reexecution by her by virtue of the change made in her own handwriting, it was a reexecution of the instrument in its entirety, including the interlineations, changes and additions by Mr. Seftenberg.

It is true that the situation here presented is unique, and no case has been cited which involves a factual situation wherein the changes in an holographic will were made by a stranger thereto with the consent and acquiescence of the testator, subsequent to the original execution of said will. It is likewise true, that all the cases cited to the effect that an holographic will is invalid when not entirely written, dated and signed, by the hand of the testator, are without exception, cases where the foreign matter was included in the will at the time of its original execution, and not one of them involves a subsequent incorporation of foreign matter. But we think the obvious purpose and intent of the legislature of making an holographic will completely, entirely and wholly the exclusive act of the testator, leads necessarily to the conclusion that the slightest change by a stranger with the knowledge and consent of the testator, at any time during its existence, will completely vitiate any instrument as an holographic will.

We have little doubt that in consenting to and acquiescing in the changes and alterations in her original holographic will by Mr. Seftenberg, the testatrix fully realized the result of her action which rendered said instrument ineffective as a testamentary disposition of her property. ■ A will is a solemn instrument and is recognized as such by those desiring to make testamentary disposition of their property. We do not think it reasonable to suppose that the testatrix in the instant case permitted Mr. Seftenberg to make interlineations, changes, and cancellations upon the document before him, and at the same time expected said document to retain its character as a valid testamentary disposition of her property.

The fact that the decedent on the day following the conference in which her holographic will was marked up by Mr. Seftenberg made a declaration of trust in which she disposed of all her Illinois property in the same manner as that in which she had disposed of her estate in her holographic will as modified, would indicate that she had intentionally abandoned and discarded her holographic will. This conclusion is further strengthened by the fact that she had prepared by an attorney a draft of a formal will embracing all the terms and conditions of the holographic will as modified by the interlineations, alterations, and changes made by herself and Mr. Seftenberg.

The refusal of the courts in the past to permit any deviation from the clear, plain requirements of the code section governing the due execution of holographic wills was based upon the theory that the rigid requirement that such wills be entirely in the handwriting of the testator was enacted by the legislature to afford protection from the danger of forgery of such a will, not protected, as is a formal will, by the safeguard of the requirement of due attestation by competent witnesses. (*Estate of Dreyfus, supra.*) In other words, the fact that a document is entirely in the handwriting of a testator, offers an adequate guaranty of its genuineness. This same reasoning applies, and the same danger of forgery exists, we think, with reference to cancellations, interlineations, and alterations made in an holographic will, and requires the changes, alterations, and interlineations to be made wholly in the handwriting of the testator. Such rigid

and strict requirement is neither, in our opinion, unreasonable nor unwise.

We are satisfied that the conclusion reached by the probate court is correct.

The judgment is affirmed.

Shenk, J., Edmonds, J., and Houser, J., concurred.

Rehearing denied.