**Vernon SEELEY, Ted Seeley and Leonard Seeley, Appellants (Petitioners),**

v.

**The Matter of the ESTATE of Hazel M. SEELEY, Appellee (Respondent).**

**No. 5442.**

Supreme Court of Wyoming.

May 6, 1981.

John M. Daly (argued) and Michael A. Maycock of Daly, Maycock & Anderson, Gillette, on brief, for appellants.

Mark L. Hughes of Hughes & Hughes, Sundance, for appellee.

Before ROSE, C. J., RAPER, THOMAS and ROONEY, JJ., and TAYLOR, D. J.

RAPER, Justice.

This appeal involves a will contest. After proceedings to probate a will had been commenced, appellants petitioned the district court to deny admission to probate of a holographic will on various grounds. This petition was amended to include a challenge

based upon the discovery that the will had, subsequent to its publication, been altered by physically cutting out a paragraph. Following a trial, the trial judge denied the petition to set aside the will, and judgment was entered accordingly.

Appellants set out the issues to be:

1. "A handwritten document cannot remain a valid will after having a bequest physically cut out, and the remaining pieces taped together, because of the execution requirements for a valid holographic will."

2. "The presumption that the decedent intended to revoke the handwritten document as her will was not rebutted by the evidence."

3. "There was no republication or revival of the handwritten document as decedent's will."

The appellee believes that the "issues" as presented by appellants are argument and sets them out to really be:

1. "Is a valid holographic will revoked by the testator's act of physically cutting out a provision in the will and thereafter taping the remaining portions together?"

2. "Is there evidence to support the probate court's finding that the deletion and removal of the paragraph by the testator was not done with the intention to revoke the will?"

We will affirm.

The facts are not in dispute, so we will borrow heavily from the language of counsel appearing in their briefs. Hazel M. Seeley had six children. Three of her children were daughters, Arlene Tenke, Darlene Speidel and Donna Blackburn, who were named as the principal beneficiaries under the disputed will. Her three male children were Tommy Seeley, Ted Seeley and David Seeley. In 1975 David Seeley predeceased his mother, leaving two sons, Vernon and Leonard, surviving.

On or about December 28, 1977, Hazel M. Seeley, the decedent, went to the Sundance State Bank accompanied by her daughter, Ms. Darlene Speidel. Ms. Seeley went to the office of Richard Durfee, the president of the bank, and requested him to witness the signing of a document. He called a bank employee, Norma Peterson, into the room and together they saw Ms. Seeley sign a document, which they then signed as witnesses. Mr. Durfee made three copies, after which Ms. Seeley placed the original document in her handbag and left. Mr. Durfee placed a copy in his files. It is not clear from the record what happened to the third copy. But the executed will was entirely in the handwriting of the decedent, except for the signatures of the witnesses. The following is a reproduction of the photocopy kept by Mr. Durfee:

*1977*

Last Will and Testament of Hazel Maude Seeley

Know all men by these present: That I - Hazel Maude Seeley of the city of Sundance, County of Crook & State of Wyoming, being of sound mind and memory, do make and declare the following to be my last will and Testament.

First I direct my Executrixes, my 3 Daughters – Herein-after named: Donna Gwen Blackburn, Arlene June Tenke, Darlene Joan Speidel – To pay all my Funeral expenses, administration expenses of my Estate, including inheritance and Succession taxes State or Federal, ____ which may be occasioned by the passage of or succession to any interest in my estate under the terms of this instrument, and all my just debts.

Second: – I bequeath $100.00 (one Hundred Dollars) to each of my Surviving Sons – Tommy Earnest Seeley – and Ted Edwin Seeley, as they inherited Ranches from us, when Claude's estate was settled.

If Tommy Earnest, survives me, He shall have the option of purchase the land east & around the monument – which I claim – for the current selling Price.

Third: – All the rest, residue and remainder of my estate, both real and personal, of what-so-ever kind or character, and where so ever situated, shall be devided into 3 equal parts, and I give, devise and bequeath one such part to each of the following persons: Donna Gwen Blackburn, Arlene June Tenke and Darlene Joan Speidel to be hers absolutely and forever

Fourth:
The share of any person above named, who shall not survive me, shall revert to such persons issue in equal shares, per stirpes.

Fifth: I here by appoint; Donna Gwen Blackburn – Arlene June Tenke Darlene Joan Speidel as Executrixes of this my last will and Testament and I direct them to serve without bond.

Witness: R. H. Alinge    written by and signed by Hazel M. Seeley
Norma Peterson    Dated Dec. 28. 1977

---

On February 29, 1980, the decedent went to the Sundance State Bank again, accompanied by Ms. Darlene Speidel. She went to the safety deposit box area and was admitted to her box by her daughter, Ms. Arlene Tenke, a bank vice-president. The box was thereafter locked. On March 26, 1980, Ms. Seeley died. It should be observed that during the interim period between original execution of the will and placing the will in the safety deposit box on February 29, 1980, no one had access to the will other than Ms. Seeley.

On April 8, 1980, sometime after Ms. Seeley's death, Darlene Speidel, an executrix, and Mark L. Hughes, attorney for the es-

tate, went to the Sundance State Bank and obtained access to Box 59 held in the name of Hazel M. Seeley. They removed the document in question. Neither at that time noticed that the document had been cut.

Publication had begun for the admission of the will to probate shortly after Ms. Seeley's death when decedent's son, Ted Edwin Seeley, appellant, together with two grandsons of Hazel M. Seeley, children of her deceased son David, also appellants, filed to contest the admission of the will to probate. In the course of the proceedings, Richard Durfee, Arlene Tenke, and Norma Peterson were scheduled for depositions on August 25, 1980. Prior to their depositions, they took from Mr. Durfee's file the copy of the will that had been made on December 28, 1977, and compared it to the will on file at the courthouse. It was at that point in time that discovery was made that the will deposited in the safety deposit box on February 29, 1980, had been altered since its execution and witnessing in 1977. There had been cut from the center of the only page of the will a provision pertaining to decedent's son, Tommy Earnest Seeley, which gave him in the "Second" paragraph an option to buy certain of his mother's land:

> "If Tommy Earnest survive's [sic] me, he shall have the option of purchasing the land east + [sic] around the monument— which I own—for the current selling price." .

As can be noted from the photocopy set out earlier, the format of the document was such that this portion could be deleted by cutting the document above and below the provision and the top and bottom parts

could be perfectly matched and secured together on the back side with cellophane tape, which was done. Our examination of the original, out of which the clause had been severed, gives us an understanding of why the alteration would hardly be noticeable if given only a casual glance, as was probably the case when the contents of the safety deposit box were first removed.

This case should be decided under the substantive statutory provisions in effect prior to adoption of the Wyoming Probate Code, ch. 54, S.L.Wyo.1980, effective April 1, 1980. Since the decedent died on March 26, 1980, the following sections on holographic wills are therefore controlling:

Section 2–4–108, W.S.1977: "This act [§ 2–4–104] shall not apply to olographic or holographic wills."

Section 2–4–109, W.S.1977: "An 'olographic or holographic will' as herein defined is one that is entirely written and signed by the hand of the testator himself; and is not required to be in any particular form and may be made in or out of this state, and need not be witnessed."

Section 2–4–110, W.S.1977: "An olographic or holographic will may be proved the same as any other private writings; and where it is necessary to prove the signature and hand writing of the deceased, the notice of the taking of deposition may be included by the clerk of court, in the notice of probate of wills." [1]

Section 2–4–105, W.S.1977, pertaining to revocation provided:

> tion of the will, their subsequent incompetency shall not prevent the probate and allowance of the will. No subscribing witness to any will can derive any benefit therefrom unless there are two (2) disinterested and competent witnesses to the same, but if without a will the witness would be entitled to any portion of the testator's estate, the witness may still receive the portion to the extent and value of the amount devised."

1. The current provisions appear as:

Section 2–6–113, W.S.1977, 1980 replacement: "A will which does not comply with W.S. 2–6–112 is valid as an holographic will, whether or not witnessed, if it is entirely in the handwriting of the testator and signed by the hand of the testator himself."

Section 2–6–112, W.S.1977, 1980 replacement: "Except as provided in the next section [§ 2–6–113], all wills to be valid shall be in writing, or typewritten, witnessed by two (2) competent witnesses and signed by the testator or by some person in his presence and by his express direction. If the witnesses are competent at the time of attesting the execu-

Section 2–6–206, W.S.1977, 1980 replacement: "An holographic will may be proved the same as any other private writing."

As can be seen, there is little change in substance.

"No will *or any part* thereof shall be revoked unless by burning, tearing, cancelling or obliterating the same with the intention of revoking it, by the testator or by some person in his presence and by his direction, or by some other will or codicil in writing, signed, attested and subscribed in the manner provided by law for the execution of a will, excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator. The power to make a will implies the power to revoke the same."[2] (Emphasis added.)

There seems to be no conflict between the old and new provisions of the statutes involved at least so far as this case is concerned. Section 2–6–116 of the Wyoming Probate Code adopted in 1980 would seem to settle such matters, if a conflict should exist:

"A written will is valid if executed in compliance with W.S. 2–6–112 or 2–6–113 or if its execution complies with the law at the time of execution of the place where the will is executed, or of the law of the place where at the time of execution or at the time of death the testator is domiciled, has a place of abode or is a national."

■ Though neither party discussed the concept of a partial revocation, § 2–4–105, supra, (as well as § 2–6–117, supra, 1980 replacement) recognizes that a will may be revoked in part.

"Where a partial revocation is permissible a single clause of a will may be revoked if only that clause is cancelled or obliterated and a testator may, it seems, reduce the interest of a beneficiary, but it is very generally held that the effect thereof must not be to effect a new testamentary disposition, or operate to enlarge the estate of anyone who takes under the same will, or to change the character of the remaining provisions of the instrument, since in such case there is not simply a revocation but a new devise, which can be made only by reexecution and republication of the will, * * *." (Footnotes omitted.) 95 C.J.S. Wills § 279, p. 61.

Other jurisdictions recognize that, when statutorily permitted, a partial revocation occurs if a part of the will is cancelled by the testator in an authorized fashion. This is limited by the requirement that the remainder, standing alone, is an understandable testamentary expression and the alteration does not result in a new dispositive scheme. *Estate of Becklund*, 7 Wash.App. 10, 497 P.2d 1327 (1972). See also, *Jackson v. Cannon*, 266 S.C. 198, 222 S.E.2d 494 (1976). We believe this doctrine is sound and accept it as the law in this jurisdiction.

■ Holographic wills are not exempt from revocation as provided in § 2–4–105, supra (or § 2–6–117, supra, 1980 replacement). Accordingly, they may be partially revoked by the testator as long as the remainder expresses an intelligible testamentary expression, and the revocation does not create a new scheme of disposition.

■ Here three lines of a holographic will were removed by cutting. The remaining pieces of the will were carefully taped back together. Appellants on page 10 of their brief stated that they agree with the district court's finding that Hazel Seeley, testator, cut out and removed the missing portion of her will. What remains of the will is an understandable disposition of her property. It is interesting to note that the son affected by the clause removed is not contesting the will. The testamentary scheme is basically the same as before. Therefore, as long as the requisite intent was present, under our statute a partial revocation occurred.

---

**2.** Section 2–6–117, W.S.1977, 1980 replacement, of the Wyoming Probate Code now provides:

"(a) A will *or any part* thereof is revoked: [Emphasis added.]

"(i) By a subsequent will which revokes the prior will or part expressly or by inconsistence; or

"(ii) By being burned, torn, cancelled, obliterated or destroyed with the intent and for the purpose of revoking it by the testator or by another person in his presence and by his direction."

[There is no subsection (b)]

Determining testator's intent was a question of fact to be resolved by the trial judge. Here, the judge found that the alteration had been made with the intent to modify the will so as not to provide Tommy Seeley with an option to purchase the monument property. This is the intent necessary for a partial revocation. On appeal we must assume the evidence of the prevailing party is true, and liberally construe special findings of fact favorably to the judgment. We presume that the district court was correct unless its findings are clearly erroneous, or contrary to the great weight of the evidence. *Wallis v. Luman*, Wyo., 625 P.2d 759 (1981). Here there is more than sufficient circumstantial evidence to support the district court's conclusion that the testator had intended to modify and republish her will by revoking the grant of a purchase option to Tommy Seeley. The meticulous care that testator used in removing a part and restoring the remaining segments to a total document demonstrated her desire to leave an intact will except for the purchase option. Her intent is bolstered by the fact that the will had been placed in a safety deposit box where it was likely to be found. There are no surrounding circumstances which would indicate that there was any intention to "obliterate" the entire document by removal of a portion. There is certainly present a clear intention to "obliterate" a part, which is permissible. That the will was not witnessed after change is irrelevant in that a holographic will does not need witnessing in the first place.

Affirmed.

ROONEY, Justice, dissenting.

The majority opinion charts a new path in Wyoming for determination of the validity of a will. In doing so, it disregards specific statutory formal requirements of a valid will. I cannot agree therewith.

Former § 2–4–104, W.S.1977 was in effect at the time pertinent to the will here in question.[1] It set forth the requirements for a valid will:

"All wills to be valid must be in writing, or typewritten, witnessed by two (2) competent witnesses, and signed by the testator or by some person in his presence and by his express direction, and if the witnesses are competent at the time of attesting the execution of the will, their subsequent incompetency, from whatever cause it may arise, shall not prevent the probate and allowance of the will. No subscribing witness to any will can derive any benefit therefrom unless there be two (2) disinterested and competent witnesses to the same, but if without a will such witness would be entitled to any portion of the testator's estate, such witness may still receive such portion to the extent and value of the amount devised."

Former § 2–4–108, W.S.1977 (quoted in the majority opinion) provided that former § 2–4–104, W.S.1977 would not apply to holographic wills.

*But the reason for the non-applicability is of prime importance to the issue in this case.* The necessity of attesting witnesses is dispensed with when the will is in the handwriting of the deceased because the handwriting itself is a guarantee against forgery.[2]

"The recognition given such an instrument as a valid testamentary instrument despite the lack of compliance with the formality of attestation is ascribed to the fact that a successful counterfeit of another's handwriting is exceedingly difficult, and that therefore the requirement that it be in the testator's handwriting would afford protection against a forgery. * * *" 79 Am.Jur.2d Wills, § 702, p. 782.

The majority opinion accepts the dissection and reconstruction of this will as a proper revocation of part of it *by the testator*. It is acknowledged that the where-

---

**1.** *Similar provisions are now in § 2–6–112, W.S.1977.*

**2.** Wyoming is not one of those states which follows a theory derived from the French Napoleonic Code and which recognizes a holographic will as a distinct type of will with certain prescribed formalities for its execution.

abouts of the will was unknown from the time it was made on December 28, 1977 until it was placed in a safety deposit box at the bank on February 29, 1980. The majority opinion concludes that during this period "no one had access to the will other than Ms. Seeley." The only evidence for such a conclusion was the following testimony of one of the testator's daughters, Darlene, who was one of the principal beneficiaries of the will:

"Q. Do you know if anyone had access to that document other than your mother?

"A. Nobody did."

and

"Q. Mrs. Speidel, do you know who took the paragraph out of the middle of that Petitioner's Exhibit No. 1?

"A. I didn't see her do it, but, Mother.

"Q. How do you know that?

"A. That's just her hand written will and nobody else had access to it. Nobody could have."

The opinion given by Darlene was not supported by any facts, and a more accurate description of the situation was probably that given by another daughter, Arlene:

"Q. Did she have a safe place at home to keep it?

"A. Well, she had several places that she would put things, *and I assumed* that she either carried it in her purse or did have it locked away at home." (Emphasis added.)

The majority opinion accepts the proposition that the deletion was made by the testator from circumstances other than the protective formalities required by law. If testator had evidenced her intention to make the change by noting it in her handwriting on the instrument or otherwise, the requirements of the statute would have been met. An interlineation or an obliteration in the handwriting of the testator would satisfy the means set forth by statute to prevent forgery or fraud. But this was not done here.

If this had been other than a holographic will, the change or partial revocation would need to be accomplished with the statutory protective formalities. The same is true of a holographic will.

"An addition to, or alteration of, a will does not operate to revoke it, unless made animo revocandi, and that intention, to be effectual, must be evinced in the mode prescribed by the statute. Therefore, alterations and additions will not work a revocation of a will unless made with all the formalities necessary to the execution of the will; and, if alterations are done without such formalities, the original instrument remains in force. On the other hand, a will, parts of which have been stricken, may be republished and reexecuted as a new will which will revoke the original will." (Footnotes omitted.) 95 C.J.S. Wills, § 282, pp. 66–67.

The document here presented for probate was not the same instrument which was signed by the testator. It was not changed or partially revoked *in her handwriting*. There is nothing in her handwriting to reflect the change to have been pursuant to her intention. The majority opinion substitutes for the statutory-protective requirement a finding from circumstances that she intended the changes. The precedent results that a scratch-out, obliteration, cutout and repasting, or other type of change or partial revocation of a non-holographic will originally attested by witnesses is a proper instrument for probate—even without the attesting formalities to the change or revocation as required by statute.

In determining the propriety of a will for probate, we are not construing a contract. We are not looking for the testator's intent (once admitted to probate, such may be necessary). Any inquiry should be to ascertain if statutory requirements have been met. They were not here met.

A will found in a purse or drawer or some other place by a relative of a testator who feels she was not properly provided for therein should not be subject to surreptitious change. The statutory protection against such is insistence that the change be properly attested to by qualified witnesses with reference to the usual wills, and that they be properly verified through a hand-

written notation or indication with reference to holographic wills. See *In Re Wilson's Estate*, Wyo., 397 P.2d 805 (1964); *In Re Towle's Estate*, 14 Cal.2d 261, 93 P.2d 555, 124 A.L.R. 624 (1939). This was not here done. I would reverse with directions to refuse to admit the proffered will to probate.