[L.A. No. 31280. Mar. 1, 1982.]

Estate of FRANCES BURNS BLACK, Deceased.
GENE RAY BOUCH, Petitioner and Appellant, v.
DAISY DIANE BLACK ROMBOTIS, Contestant and Respondent.

COUNSEL

James W. Edson for Petitioner and Appellant.

James S. Munak, Clement J. O'Neill and O'Neill & Munak for Contestant and Respondent.

Cromwell Warner, Jr., E. Avery Crary, Wendy G. Glenn, Meserve, Mumper & Hughes, Melvin H. Malat and Ambrose, Malat & Lans as Amici Curiae on behalf of Contestant and Respondent.

Cooley, Godward, Castro, Huddleson & Tatum and Stephen S. Ashley as Amici Curiae.

OPINION

**RICHARDSON, J.**—Appellant Gene Ray Bouch appeals from the denial of probate of the holographic will of Frances B. Black, deceased, who died on September 6, 1977, a resident of Long Beach, California. A copy of the instrument, which purported to leave the bulk of her estate to appellant and his family, is attached as an appendix. [See *post*, page 909.] It may be seen from an examination that the instrument was handwritten on three pages of a partially preprinted stationer's form. It is conceded by all parties that all of the handwriting, including the date and her name, is that of the testatrix. Probate was denied because of her incorporation of some of the printed language on the stationer's form. Having found that none of the incorporated material is either material to the substance of the will or essential to its validity as a testamentary disposition, we conclude that the trial court erred in rejecting the holograph and reverse its order.

FACTS

Testatrix used three copies of a stationer's form, which form obviously was intended to be used for a one-page will. In appropriate blank spaces in the exordium clause at the top of each page, and in her own handwriting, testatrix inserted her signature and the place of her domicile. Other printed language on each page of the form relating to residuary gifts, the appointment of an executor, attesting witnesses and

a testimonium clause generally was either stricken or ignored by testatrix. At the bottom of her third and last page, however, following all of the dispositive provisions of the will, she inserted in the appropriate spaces of the preprinted form the name and gender of her executor. And although she dated the holograph entirely in her own hand at the top of the first page of her will, she also utilized pertinent blanks to insert the date of the instrument at the end of the last page and to identify the city and state in which she executed it.

Using virtually all of the remaining space on each of the three pages, testatrix expressed in her own handwriting a detailed testamentary disposition of her estate, including specific devises and legacies to individuals and a charitable institution and a bequest of her residuary estate. As noted, no handwriting of any other person appears on any of the three pages.

Probate was denied to the holograph apparently because testatrix was seen to have "incorporated" the indicated preprinted portions of the form "as part of her will," in violation of the presumed, implied prohibition of Probate Code section 53, which provides: "A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form, and need not be witnessed. No address, date or other matter written, printed or stamped upon the document, which is not incorporated in the provisions which are in the handwriting of the decedent, shall be considered as any part of the will."

## DISCUSSION

Where, as here, there is no conflict in the evidence, "'the validity of the holographic instrument must be determined entirely by reference to the applicable statutes and principles of law.' [Citations.]" (*Estate of Baker* (1963) 59 Cal.2d 680, 683 [31 Cal.Rptr. 33, 381 P.2d 913].) Unanimously in *Baker*, we stressed that "The policy of the law is toward 'a construction favoring validity, in determining whether a will has been executed in conformity with statutory requirements' [citations]." (*Ibid.*) Moreover, we affirmed "'the tendency of both the courts and the Legislature ... toward greater liberality in accepting a writing as an holographic will....'" (*Ibid.*) "'*Substantial compliance with the statute, and not absolute precision is all that is required....*'" (*Id.*, at p. 685, italics added.)

The interpretive principles expressed by us in *Baker* are fully consistent with our early analysis of the holographic will statute in *In re Soher* (1889) 78 Cal. 477, 482 [21 P. 8], wherein we observed that: "If testators are to be encouraged by a statute like ours to draw their own wills, the courts should not adopt, upon purely technical reasoning, a construction which would result in invalidating such wills in half the cases." That sensible admonition is no less appropriate today. (See Bird, *Sleight of Handwriting: The Holographic Will in California* (1981) 32 Hastings L.J. 605, 633; Niles, *Probate Reform in California* (1979) 31 Hastings L.J. 185, 212.)

In construing section 53 we bear in mind the primary legislative purpose of the holographic will statute which was identified by us in *Estate of Dreyfus* (1917) 175 Cal. 417, 418-419 [165 P. 941], as the prevention of "fraudulent will-making and disposition of property" by virtue of the recognized difficulty of forging an entire handwritten instrument. After reviewing the legislative history of the statute in *Dreyfus* we had "no doubt that [the holographic provision] owes its origin to the fact that a successful counterfeit of another's handwriting is exceedingly difficult, and that, therefore, the requirement that it should be in the testator's handwriting would afford protection against a forgery of this character." (*Id.*, at p. 419.)

This same statutory purpose has received academic recognition. As noted by Professor Osborn: "An extended holograph . . . is perhaps the most effective means of proving practical execution, even more than witnesses, and the law relating to holograph wills recognizes this fact. . . ." (Osborn, Questioned Documents (2d ed. 1929) p. 682; see also Hancock, *Equitable Conversion and the Land Taboo in Conflict of Laws* (1964-1965) 17 Stan.L.Rev. 1095, 1098.) An overly technical application of the holographic will statute to handwritten testamentary dispositions, which generally are made by persons without legal training, would seriously limit the effectiveness of the legislative decision to authorize holographic wills.

In *Baker* we upheld a holographic will against the contention that the testator's "incorporation" of the printed words "MODESTO, CALIFORNIA" in his will should invalidate it under the statute. We first noted that the printed words were "not *relevant to* [the holograph's] *substance* or *essential to its validity* as a will or codicil . . . ." (59 Cal.2d, at p. 683, italics added.) Significantly, we then declared that even if it were assumed that the testator had included the printed words because he

believed the designation of a locality was necessary in a will, "It would unreasonably advance form over substance to hold that such mistaken belief, if it existed, would defeat the testator's clearly, and otherwise validly, expressed testamentary intent." (*Id.*, at p. 685.) Emphasizing that the preprinted words were "immaterial to validity of the document as a holographic will," and irrelevant to "decedent's testamentary intent, or to the dispositive meaning or adequacy" of the instrument (*ibid.*), we rejected the challenge to the holograph. We concluded that "such words may not be held to have been incorporated so as to render the document ineffectual as a will and thereby defeat the decedent's declared testamentary intent." (*Id.*, at p. 684.)

Our *Baker* analysis involved us in several separate inquiries: Was the particular provision relevant to the substance of the will? Was it essential to the will's validity? Did the testator intend to incorporate the provision? Would invalidation of the holograph defeat the testator's intent? In *Baker*, we stressed that these inquiries must not be undertaken mechanically so that a demonstrated testamentary intent is subordinated to a wooden adherence to form.

In the instant case it is argued that Frances Black's handwritten insertions evidence an intent physically to incorporate portions of the preprinted language into her will, thus invalidating the holograph. But it is equally apparent that testatrix here, as in *Baker*, was mistaken as to the necessity of using the printed language to make an effective will. The printed preamble is totally superfluous to her identification of the document as a will and herself as its maker; both are accomplished in the clearly expressed words of the document written by her own hand. Her usage of the closing "testimonial" clause is also unnecessary, both because she had already dated the instrument in her own hand at the top of the first page and, as we noted in *Baker*, because designation of the locality of execution is not required in a will.

Similarly, the testatrix' use of the printed clause referring to a personal representative is patently irrelevant to the "substance"—or dispositive provisions—of her will and is not essential to its validity. In the absence of such a designation, the probate court will name an administrator with the will annexed to carry out the testator's intent and to perform the statutory obligations of a personal representative.

*Baker's* common sense interpretation of section 53 evidences our inclination "to see the 'incorporation' language of the statute not so much

as focusing on whether the testator intended to include the printed matter mechanically into the physical body of the text but more on whether, because of its importance or materiality to the testamentary message, he intended to include it." (French & Fletcher, *A Comparison of the Uniform Probate Code and Cal. Law with Respect to the Law of Wills*, in Comparative Probate Law Studies (ALI 1976) pp. 342-343; see *Estate of Nielsen* (1980) 105 Cal.App.3d 796, 802 [165 Cal.Rptr. 319].)

Our liberal statutory interpretation and emphasis on "substantial compliance" expressed in *Baker* has been well understood, for there have been few reported decisions subsequent thereto which have adopted the hypertechnical application of section 53 to holographic wills which we disapproved in *Baker*. Only one such case deals with a partially preprinted stationer's form, such as that herein presented—*Estate of Christian* (1976) 60 Cal.App.3d 975 [131 Cal.Rptr. 841]. Before rejecting the holograph offered there on the ground that the testator fatally "incorporated" into his will some of the preprinted language relating to the appointment of an executrix, the *Christian* court observed the judicial and legislative tendency toward upholding holographic wills, specifically acknowledging *Baker's* affirmation that "unless the printed or typed matter is relevant to the 'substance' of the decedent's will, it can be disregarded as surplusage. (59 Cal.2d p. 683.)" (60 Cal.App.3d at p. 981; accord *Estate of Nielsen, supra,* 105 Cal.App.3d at p. 802.)

The *Christian* court chose, however, to "interpret the term 'substance' as used by the *Baker* court in a broad sense to include all of the provisions material to the decedent's *testamentary intent with respect to the probate* of his will, i.e., the administration and distribution of his estate." (60 Cal.App.3d, at p. 982, italics added.) Because the appointment of a personal representative obviously was "pertinent to the administration of the testator's estate," the court in *Christian* concluded that the printed language "must be deemed a part of the will under the relevancy standard of *Baker* ...." (*Ibid.*)

In our view, *Christian* erred in defining overly broadly the term "substance" in order to invalidate the holograph in question. There was no indication in *Christian* that the testator's "testamentary intent" extended to the statutory, administrative and procedural details encompassed within the probate of his will and the administration of his estate. Nor can we say as a matter of law, or even as a general proposition, that "testamentary intent" must be held to encompass the probate

procedures utilized to implement that intent. In *Baker* we nowhere suggested that the details of probate administration were relevant to the "substance" of a decedent's will so that "incorporation" of printed language pertaining thereto would invalidate a holograph. Rather, we expressed our preference for a "construction favoring validity" and "accepting a writing as an holographic will." (*Baker, supra*, 59 Cal.2d at p. 683.)

To support its departure from that preference, the *Christian* court relied upon *Estate of Helmar* (1973) 33 Cal.App.3d 109 [109 Cal.Rptr. 6], where a holographic will was invalidated because of a typewritten introductory clause included therein. In so doing, however, *Christian* acknowledged that *Helmar* would necessarily require the invalidation of a holograph which incorporated printed or typewritten material "irrespective of its relevancy to the testator's intent," and significantly observed: "In our view this comes perilously close to reaffirming the statements and implications in [*Estate of*] *Bower* [(1938) 11 Cal.2d 180 (78 P.2d 1012)] which were expressly disapproved in *Baker*...." (*Christian, supra*, 60 Cal.App.3d, at p. 983.) What we disapproved in *Baker*, of course, was *Bower's* invalidation of a holograph because the testator there mistakenly had concluded that a printed introductory clause—such as we have in the instant case—was "indispensible to and should be made a part of his will," *even though* the court had recognized that such "introductory ... matters are not essential to a testamentary document." (*Bower, supra*, 11 Cal.2d., at p. 184, italics omitted; see *Baker, supra*, 59 Cal.2d, at p. 686.)

Having already rejected *Bower's* reasoning in *Baker*, and expressly reaffirming the latter's principles and rationale, we disapprove both *Estate of Christian* and *Estate of Helmar,* both *supra*, insofar as they are inconsistent with this opinion.

Like *Christian* and *Helmar*, the dissent fails to acknowledge the sharp change in the law signaled by *Baker*. In order to justify its return to a mode of will construction resoundingly rejected in *Baker*—one which advances "form over substance" even when concededly defeating the "testator's clearly, and otherwise validly, expressed testamentary intent" (see *Baker, supra*, 59 Cal.2d, at p. 685)—the dissent seeks to characterize that case as an aberration in the development of holographic will law. But *Baker* represents our last view on the subject and it was a unanimous view.

Read literally, section 53 requires only that a holographic will be "written, dated and signed" by the hand of the testator, and that printed matter not incorporated in the handwritten provisions not be considered as any part of the will. Under *Baker's* substantive interpretation of the "incorporated" language, Frances Black's will fully satisfies the requirements of the statute. There is no question as to the authorship or authenticity of the handwritten document before us. To reiterate: There is no handwriting on any page of the holograph which is not admittedly that of testatrix. The will is dated both at its beginning and partially at its end in the handwriting of testatrix. She wrote her name on each page and we deem this a sufficient "signature." On each of the first two pages she referred to the instrument as her "will," and on the last page she expressed the hope that "this writing" would be given legal effect. The completeness and integrity of the testamentary disposition written in her own handwriting is itself evidence of her intent to authenticate the document as her last will and testament by affixing her signature at the top of each page. We have repeatedly said that "It is settled in California that the signature need not be located at the end [of a holographic will] but may appear in another part of the document, provided the testator wrote his name there with the intention of authenticating or executing the instrument as his will." (*Estate of Bloch* (1952) 39 Cal.2d 570, 572-573 [248 P.2d 21]; see also *Estate of Kinney* (1940) 16 Cal.2d 50, 53, 56 [104 P.2d 782]; *Estate of McMahon* (1917) 174 Cal. 423, 424 [163 P. 669].)

No sound purpose or policy is served by invalidating a holograph where every statutorily required element of the will is concededly expressed in the testatrix' own handwriting and where her testamentary intent is clearly revealed in the words as she wrote them. Frances Black's sole mistake was her superfluous utilization of a small portion of the language of the preprinted form. Nullification of her carefully expressed testamentary purpose because of such error is unnecessary to preserve the sanctity of the statute. Moreover, rejection of the instrument as a will would have the unfortunate practical consequence of passing her estate through the laws of intestacy to the daughter of her predeceased husband by a former marriage—in fact, a stranger to her—thereby excluding those whom she described in the holograph as "my very dear friends" and "my adopted family" and the charity which was apparently close to her heart and which she specifically wished to benefit. The resulting frustration and defeat of her testamentary plan would be directly contrary to our *Baker* reasoning and would serve neither valid public policy nor common sense.

The order appealed from is reversed.

Bird, C. J., Broussard, J., and Tobriner, J.,* concurred.

**MOSK, J.**—I dissent.

In my view the trial court correctly determined that the instrument offered for probate in this case does not constitute a valid holographic will as the Legislature has defined that term in Probate Code section 53.[1] The court found that by filling in the blanks in three standard clauses printed on the face of this commercial will form—i.e., the exordium clause, the executor clause, and the testimonium clause—the decedent "incorporated" those clauses into her purported holograph within the meaning of section 53; "otherwise," the court reasoned, "the handwritten insertions in those 3 printed paragraphs bear little relevance to the document." Because of this incorporation the resulting instrument was not "entirely" written in the hand of the decedent herself, as required by the statute, and for this reason the court held it inadmissible to probate.

I

As will appear, the ruling of the court below is supported by the history and plain meaning of the words used in section 53, by every appellate decision in this state that has considered the question, and by the undisputed facts of the case at bar.

A

The majority opinion could easily leave an unwary reader with the impression that the law of holographic wills in California began less than two decades ago, when this court decided the case of *Estate of Baker* (1963) 59 Cal.2d 680 [31 Cal.Rptr. 33, 381 P.2d 913]. The chronology, of course, is otherwise. Since the enactment of the statute of frauds more than three centuries ago, the law of England has re-

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

[1]Section 53 provides: "A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form, and need not be witnessed. No address, date or other matter written, printed or stamped upon the document, which is not incorporated in the provisions which are in the handwriting of the decedent, shall be considered as any part of the will."

quired that wills disposing of real and personal property be in writing and signed by the testator in the presence of attesting and subscribing witnesses. (Atkinson on Wills (2d ed. 1953) pp. 19-20.) In California the Legislature adopted those requirements in our first wills act, which provided for only one kind of written testamentary disposition: the formal, witnessed will. (Stats. 1850, ch. 72, p. 177, § 3; now see Prob. Code, § 50.) Holographic wills were not permitted in this state; indeed, even today such wills are not permitted in the majority of American jurisdictions. (See Atkinson, *op. cit. supra*, at pp. 355-356 [listing states that allow holographic wills].)

As a distinct form of testamentary disposition, the holographic will in its modern form originated in the law of France. It was authorized by article 970 of the Code Napoleon, and first appeared in this country in the Louisiana·Civil Code. Our Legislature adopted it in 1872 as section 1277 of the new California Civil Code.[2] The Code Commission's note to that section expressly acknowledged its civil law origin. (Cal. Code Com. note to 1 Ann. Civ. Code, § 1277 (1st ed. 1872) p. 357.)

In the ensuing years a number of cases arose in which certain portions of a purported holographic will were printed or stamped on the face of the document. The issue was whether such an instrument complied with the statutory requirement that such a will be "entirely" in the handwriting of the testator. Although the problem first arose soon after holographic wills were recognized in this state (see, e.g., *Estate of Billings* (1884) 64 Cal. 427 [1 P. 701]), it culminated in a group of decisions rendered by this court in the decade immediately preceding adoption of the Probate Code in 1931.

Thus in *Estate of Thorn* (1920) 183 Cal. 512 [192 P. 19], the decedent used a rubber stamp to twice print the name of a parcel of real property he sought to devise in the body of a will otherwise qualifying as holographic. Reversing an order admitting the will to probate, this court acknowledged (at p. 514): "Of course, the intent of the deceased is obvious. He was endeavoring to make a valid olographic will, and the manner in which he desired his property to go is clearly specified. Nor can there be a suspicion as to the genuineness of the document. But all

---

[2]"An olographic will is one that is entirely written, dated, and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this State, and need not be witnessed.". Until the statute was reenacted as Probate Code section 53 in 1931, it used the earlier spelling "olographic."

this is beside the question. We are confronted here with the question whether in this document there has been that substantial compliance with the mandatory requirements of our statutes relative to the execution of wills that is absolutely essential to the existence of a valid will." Among those requirements the court stressed that under the statute the will must be "entirely" written in the hand of the testator. (*Ibid.*) But the court did not simply hold the requirement violated if *any* printed word appeared on the face of the document; instead, that result would follow only if the stamped words "constitute a part of" the attempted will (*id.* at p. 515).

The proponents of the will contended that because the document elsewhere fully identified the property devised, the stamped words "were not necessary to complete the document as an olographic will" and hence should be disregarded as surplusage. (*Ibid.*) The court rejected this consideration as "altogether immaterial" in view of both the testator's evident intent and the placement of the words in the instrument: "We know of no rational theory upon which it can be held that words deemed by the testator himself essential to a description of the property devised, and inserted by him or under his direction as a part of such description in the dispositive clause of the will devising the property, do not constitute part and parcel of the will itself" (*id.* at p. 516).

There ensued three cases involving "letterhead wills," i.e., testamentary instruments handwritten by a decedent on stationery bearing a printed letterhead. In the first of these, *Estate of Bernard* (1925) 197 Cal. 36 [239 P. 404], the decedent wrote a purported holographic will on four sheets of hotel stationery. At the top of the first page appeared this heading: "The following 4 sheets of paper included, *Long Beach, California*, Oct. 12, 1918." (*Id.* at p. 37.) The italicized words were printed on the sheet, while the rest of the instrument appeared in the decedent's hand. The trial court revoked probate on the ground, inter alia, that the instrument was not entirely written by the decedent.

This court affirmed the order, relying on *Thorn.* The court stressed the fact that the decedent wrote the clause, "The following 4 sheets of paper included," immediately before and above the printed words "Long Beach, California," and wrote in the date immediately after those words. From this sequence the court concluded that "The printed words are incorporated in and doubtless were intended to be made a part of the heading of the document." (*Id.* at p. 42.) The court reasoned (*ibid.*) that by the use of this heading the decedent had made not only the

date, which is necessary to the validity of any holographic will, but also "the printed portion, designating the place of the making of the document, an essential part of the document." The court therefore held that the printed words were "a material part and parcel of the will" and hence the instrument was not "entirely" written in the decedent's hand. (*Ibid.*)

On different facts a different result was reached in *Estate of Oldham* (1928) 203 Cal. 618 [265 P. 183]. There the decedent wrote his holographic will on three identical sheets of his office stationery, each bearing a printed letterhead consisting of his full name and address. In contrast to *Bernard*, however, the decedent wrote his entire will after, and separately from, that letterhead. Affirming an order admitting the instrument to probate, this court explained that the printed words "are not expressly, by direct reference, or impliedly, by inference or otherwise, made a part of the written instrument" in question. (*Id.* at p. 620.) The court recognized that on the first sheet of the document the decedent wrote the date after the printed address and on approximately the same line; but the court found that "This circumstance standing alone" was "so slight that it would not warrant" the inference that the decedent "thereby intended to make such printed words any part of the document itself." (*Ibid.*) Rather, those words remained "wholly disconnected from the writing itself, and they form no part thereof." (*Ibid.*)

Finally, in *Estate of De Caccia* (1928) 205 Cal. 719 [273 P. 552, 61 A.L.R. 393], the decedent wrote his holographic will on a single sheet of stationery bearing the printed letterhead "Oakland, California." This court reversed an order denying probate. It was true the first line of the handwritten body of the will began at the same level on the page as, and to the left of, the printed words, and ended somewhat higher on the page. The court found, however, no express intent to incorporate those words: "The printed words are not preceded by any writing of the decedent in which a reference is made to said printed matter, as was found to be the case in *Estate of Bernard, supra,* indicating that it was the intention of the testator to make them a part of the instrument." (*Id.* at p. 724.) Nor did the court find any implied intent to incorporate from the position of the words on the page. The court stressed that the written line stopped significantly short of the printed matter, and rose above it only because of the natural upward slant of the decedent's handwriting: "The fact, therefore, that a part of the first line, written by the deceased, was slightly above the printed words does not, in our opinion,

show any intention to make the printed matter upon the paper a part of the document written thereon." (*Id.* at p. 725.)

It was also true that the decedent wrote the date immediately after the printed words, and on the same line. But on that point the court relied on the almost identical facts of *Oldham* in holding that the "mere fact" the decedent wrote the date in that location "is not in itself sufficient to show that he thereby intended to make said printed words a part of said instrument." (*Id.* at p. 726.) The court concluded by reiterating the rule (see *Oldham* at p. 621 of 203 Cal.) that "The mere presence of printed matter upon stationery used by a person for the purpose of writing his holographic will which forms no part of the written instrument and to which no reference directly or indirectly is made in the written instrument, will not destroy the effect of such instrument as a holographic will." (205 Cal. at p. 726.)

I have reviewed *De Caccia* and its predecessors in some detail because they are the "legislative history" of a crucial sentence added to former Civil Code section 1277 when it was reenacted in 1931 as section 53 of the Probate Code. That sentence (hereinafter called the 1931 amendment) provides: "No address, date or other matter written, printed or stamped upon the document, which is not incorporated in the provisions which are in the handwriting of the decedent, shall be considered as any part of the will." We need not speculate about its meaning: as stated in *Estate of Towle* (1939) 14 Cal.2d 261, 269 [93 P.2d 555, 124 A.L.R. 624], "There can be no question that said sentence was added to said code section to codify the holding in *Estate of De Caccia, supra.* The note by the code commissioners to section 53 of the Probate Code said: 'The last sentence is new: 205 Cal. 719,' which citation is the citation of the *Estate of De Caccia, supra.*" The consequence was equally clear: "Evidently, therefore, this provision was intended to apply to situations similar to that presented in *Estate of De Caccia, supra.*" (*Towle*, at p. 269 of 14 Cal.2d.)

This does not mean that the 1931 amendment applies exclusively to letterhead wills, although it has perhaps been invoked most often in such cases. But it does mean that whenever printed matter appears on the face of a testamentary instrument offered as a holographic will, the courts have *legislative* guidance in determining whether the will itself is nevertheless "entirely" written in the hand of the testator within the meaning of the statute. The answer depends on whether the printed

matter is "incorporated" into the handwritten provisions; in turn, that matter will be deemed incorporated if it appears from the face of the instrument that the testator intended to make it part of his will; and that intent may be either express, e.g., shown by the fact that the handwritten provisions directly refer to the printed matter, or it may be implied, e.g., inferable from the location of the printed matter on the document or from its importance to the testamentary purpose.

## B

Until today, the courts of this state have had no trouble applying these legislative directives to the case of the stationery-form will. As will appear, four such instruments have been reviewed in the reported appellate decisions, both before and after the 1931 amendment, and the courts have held without exception that they do not constitute valid holographic wills as defined by the Legislature.

The first case in point is *Estate of Rand* (1882) 61 Cal. 468. There the decedent wrote a purported holographic will by filling in blanks on a stationer's form. The exordium clause provided (*id.* at p. 474):[3]

"In the Name of God. Amen.

"I, *Augustus C. Rand*, of the City and County of San Francisco, State of California, of the age of *seventy-six* years, and being of sound and disposing mind, and not under any restraint or the influence or representation of any person whatsoever, do make, publish, and declare this my last will and testament in manner following, that is to say:"

After two printed clauses directing burial and payment of funeral expenses, the decedent interpolated two handwritten devises of real property to a named beneficiary. He then filled in the blanks of the executor clause and the testimonium clause as follows (*id.* at pp. 474-475):

"Lastly. I hereby appoint *George Babcock, of Oakland, County of Alameda and State of California*, the executor of this my last will and testament, hereby revoking all former wills by me made.

---

[3]The words written in the decedent's hand are italicized; the remainder is the printed portion of the form.

"In witness whereof, I have hereunto set my hand and seal this *twen-tieth* day of *October*, in the year of our Lord one thousand eight hundred and *seventy-seven*.

*Augustus C. Rand*."

There followed a printed attestation clause that the decedent left blank.

The trial court revoked a prior order admitting the instrument to probate as a holographic will, and an appeal was taken. The appellants argued principally that the printed portions of the form should be disregarded as surplusage because none is essential to its validity as a will, including the clause appointing an executor; that the remainder of the instrument, admittedly in the decedent's handwriting, is sufficient to constitute a holographic will; and that there is ample evidence of testamentary intent, both in the handwritten portions of the instrument and *aliunde*.[4]

In its decision this court began by emphasizing the legislative power over will formalities: "The Legislature has seen fit to prescribe forms requisite to an olographic will, and these forms are made necessary to be observed." (*Id.* at p. 475 of 61 Cal.) The court then rejected the contention that "the portions of the paper which were written by the deceased should be admitted to probate, omitting the printed portions. We are not at liberty to so hold. We should, thereby, in effect, change the statute, and make it read that such portions of an instrument as are in the handwriting of the deceased constitute an olographic will." (*Ibid.*) The court concluded that the will was not "entirely" written in the decedent's hand, and affirmed the order revoking probate.

Seven years after the adoption of the 1931 amendment, this court reviewed another stationery-form will in the case of *Estate of Bower* (1938) 11 Cal.2d 180 [78 P.2d 1012], and reached the same result. There the decedent wrote a purported holographic will (*id.* at p. 182) by filling in the blanks on a form reading as follows (see fn. 3, *ante*):

---

[4]For example, the instrument was found in an envelope on which the decedent had written, "The last will and testament of Augustus C. Rand."

"Last Will and Testament

"In the Name of God, Amen, I, *R. J. Bower* of *Bakersfield* State of *California* of the age of *61* years, and being of sound and disposing mind and memory and not acting under duress, menace, fraud, or undue influence of any person whatever, do make, publish and declare this my last WILL AND TESTAMENT in the manner following, that is to say: "First: *I give and bequeath all my property of Every Kind and Description Whatsoever Whether Real or Personal to Anna K. deBillier*

"Secondly: *R. J. Bower*
"*Ma[r]ch fourth*
"*Nin[e]teen hundred thirty two*"

The trial court admitted to probate, as a valid holographic will, only the handwritten portion of the instrument appearing after the exordium clause. This court reversed the order, with directions to deny probate. The opinion, by Chief Justice Waste, began by explaining that "It is the function of the court to apply the pertinent rules of law to the entire instrument as *executed* by the decedent and not as deleted and reconstructed by the court." (*Id.* at p. 182 of 11 Cal.2d.) The court then reaffirmed the proposition that a purported holographic will is not "entirely" written in the decedent's hand when it contains printed material that the decedent intended to incorporate therein. (*Id.* at p. 184.) Applying this rule to the facts before it, the court reasoned (*ibid.*) that "Consideration of all portions of the document here involved which are in the handwriting of the decedent, and particularly the written inserts in the blanks provided in the printed form, definitely indicate[s] that the decedent intended to include and incorporate in his will the printed portions among which the written inserts appear." The court recognized that an exordium clause is not essential to the validity of a will, but declined to rewrite the instrument by deleting a provision that the decedent obviously intended to include.[5]

---

[5]Thus the court explained: "True, such introductory written and printed matters are not essential to a testamentary document. But, the fact remains that the decedent herein concluded that they were indispensable to and should be a part of *his* will and he manifestly made them a part of *his* will. This is not the first instance wherein matter, unnecessary from a purely legal viewpoint, has made its way into the body of a document testamentary in character. As stated above, we are to read the decedent's will as *he wrote it* and not as we would write it in order to cause it to comply with established legal principles." (Italics in original.) (*Ibid.*)

The court then distinguished *Oldham* and *De Caccia* on their facts, stressing that in neither case did the will evidence a similar intent of the testator to incorporate the printed portions of the document. By contrast, in the case before the court it was "obvious that the testator by inserting words in his own handwriting in the blank spaces appearing in the printed form intended that such written words should be read with and, where necessary, explained or given meaning by reference to the printed portions of the form. The document, as executed by the decedent, may not reasonably be read in any other light, respondent's contention to the contrary notwithstanding. It clearly appears, therefore, from the face of the will itself that the printed matter was intended by the decedent to be incorporated in the will as executed by him. This, as already indicated, is fatal to its validity." (*Id.* at p. 187 of 11 Cal.2d.)

Finally, the court found the 1931 amendment no bar to its holding. Noting that the amendment simply codified *De Caccia*, the court reiterated that "the rule announced in the De Caccia case is not applicable to the factual situation here presented." (*Id.* at p. 188.)

In the next case in this series, *Estate of Goldsworthy* (1942) 54 Cal.App.2d 666 [129 P.2d 949], the decedent likewise wrote a purported holographic will on a stationer's form; he did not fill in any of the blanks, but interpolated a number of written dispositions between the printed clauses. The trial court denied probate, finding that the decedent intended to make the printed exordium clause a part of his will.[6] The Court of Appeal affirmed, stressing that the decedent deliberately chose to use a stationer's form for his testamentary purpose. The proponents of the will contended that the 1931 amendment was proof of a legislative intent in favor of a more liberal rule of construction of all holographic wills, and that under such a rule the printed portions of a stationery-form will should be disregarded as surplusage. Rejecting this argument, the court reaffirmed that the amendment was intended only to codify the *De Caccia* rule, and concluded (*id.* at p. 674) that "To sustain the will in this case would require us to read into the statute, language which is not to be found therein."

Most recently, in *Estate of Christian* (1976) 60 Cal.App.3d 975 [131 Cal.Rptr. 841], the decedent wrote a purported holographic will (*id.* at

---

[6]The court also found there was no authenticating date on the face of the instrument.

p. 977) by filling in the blanks on a stationer's form reading as follows (see fn. 3, *ante*):

"LAST WILL AND TESTAMENT

"I, *Jack Christian*, a resident of *4487 No. Maroa, Fresno*, California, declare this to be my last Will and revoke all other Wills previously made by me:

"FIRST: *I leave all my worldly goods and possessions including all monies in Banks and Financial institutions to Mrs. Marie K. Heckel and my sister Mrs. C. O. Beck. this [sic] includes property and all.*

*Jack Christian.*

"I appoint *Marie K. Heckel* as Execut*rix* of this Will.
"This Will was signed by me on the *21st* day of *May*, 1972 at *4487 No. Maroa, Fresno*, California.

*Jack Christian*"

The trial court denied probate, and the Court of Appeal affirmed. Reiterating the now-settled view that the purpose of the 1931 amendment was to codify *De Caccia*, the court relied on *Bower* for the proposition that the document is to be read as a whole to determine if the testator expressly or impliedly intended to incorporate any printed matter therein. (*Id.* at pp. 978-979.) The court then stressed the executor clause in the instrument before it, and found an express incorporation of the printed words in that clause: "Since the word 'incorporate' means 'formed or combined into one body or unit; intimately united, joined, or blended' (Webster's New World Dict. of the English Language (1966) p. 738), it is evident in the present case that when the decedent wrote in the words 'Marie K. Heckel' and the letters 'rix' in the blank spaces provided in the third paragraph of the will form he intended to incorporate the printed words 'I appoint' and the letters 'execut' preceding the handwritten parts. The sentence makes sense only when the handwriting in the blank spaces and the printed words preceding the handwriting are read together." (*Id.* at p. 981.) The instrument was therefore not written "entirely" in the decedent's hand, and hence did not comply with Probate Code section 53.

## C

The case at bar is indistinguishable on its facts from *Rand, Bower, Goldsworthy*, and *Christian*. Here, too, decedent did not simply write out her will on a handy sheet of personal or business stationery that happened to bear a printed letterhead; instead, she deliberately procured a predrafted commercial will form for the purpose.[7] With equal deliberateness decedent then adapted that form to her use, striking out some but not all of the printed matter, interpolating handwritten directions as to the disposition of her property, and filling in the blanks in the exordium clause, the executor clause, and the testimonium clause. The handwritten portions of those clauses make no sense without reference to their printed portions; indeed, in the executor clause there is a handwritten entry ("or") that decedent did not even mean to be a complete word, but only the suffix to a partial word or root ("execut") printed on the form.[8] As the Utah Supreme Court reasoned in the leading case of *In re Wolcott's Estate* (1919) 54 Utah 165 [180 P: 169, 170, 4 A.L.R. 727] "If the deceased had written across the printed words and figures, or through them, or over them, or entirely regardless of them or their meaning and effect, her writing alone would have been admissible in evidence to the same effect as if written on blank paper. But such was not the case. The printed matter in the instrument offered was just as much a part of its contents as the script written by her own hand. She adopted the printed matter in order to fully express her intention. She no doubt procured the blank form for the purpose of aiding her to express her intention in a formal manner. No other conclusion can properly be drawn if we view the instrument from the standpoint of reason unhampered by desire."

For the reasons stated in the above-cited decisions I conclude that decedent expressly intended to make part of her will the printed portions of the three clauses that she filled in by hand, and hence that such

---

[7]As the court observed in *Goldsworthy* (54 Cal.App.2d at p. 671), "The fact that the decedent did use a printed form is some evidence that it was procured by him for the purpose of using the printed words to manifest his intention in a formal manner. Certainly, he hoped to accomplish something by the use of the form. In order to obtain such a form he had to go to a stationery store and purchase it. Even then he was under no compulsion to use it directly as a means of expressing his intentions; he could have used a blank sheet of paper and copied from the form those portions which he thought essential to his purpose. This he did not do. He deliberately and intentionally wrote his will on the form which he obtained for that very purpose."

[8]The clause reads in its entirety (see fn. 3, *ante*): "And Lastly, I do hereby constitute and appoint *Dr. Gene Ray Bouch as my* execu*tor* of my last Will and Testament, to so serve without Bond being required."

printed material was "incorporated in the provisions which are in the handwriting of the decedent" within the meaning of Probate Code section 53 (fn. 1, *ante*). By the terms of that statute, the resulting instrument was not "entirely" written in decedent's hand, and therefore failed to constitute a valid holographic will.

## II

The majority cannot and do not deny that decedent actually intended to incorporate in her will the printed portions of the clauses that she so deliberately filled in by hand. Indeed, to assert the contrary would cast doubt on decedent's soundness of mind, and hence on her testamentary capacity. (Prob. Code, § 20.) Rather, the majority in effect hold decedent's intent irrelevant, and embrace the so-called "surplusage" test for determining whether a purported holographic will complies with section 53. As shown in part I of this opinion, however, the "surplusage" test was expressly and repeatedly rejected by this court in numerous decisions until *Estate of Baker* (1963) *supra*, 59 Cal.2d 680; and as will now appear, it was unnecessary to the decision in *Baker* and for several reasons should not be adopted in the case at bar.

To begin with, *Baker* was not a stationery-form case at all, but a letterhead case. There the decedent wrote a holographic codicil on a sheet of hotel stationery bearing the following letterhead (59 Cal.2d at p. 682):

"~~AAA~~

~~APPROVED~~

~~HOTEL COVELL~~

MODESTO, CALIFORNIA"

He crossed out the first four words of the letterhead but not the words "MODESTO, CALIFORNIA," and wrote the date on the same line as—but after—the latter. He then wrote and signed the entire codicil in the space below the letterhead.[9] The trial court nevertheless denied probate on the ground that the printed words "MODESTO, CALIFORNIA" were "impliedly incorporated" into the instrument. The beneficiary of the codicil took an appeal, and this court reversed.

---

[9] Across the bottom of the page was printed a hotel advertising slogan, but the trial court correctly ruled that it was not incorporated in the codicil because it appeared after the decedent's signature.

The court began by quoting the summary in *Bower* (at p. 187 of 11 Cal.2d) of the holding of *Oldham* and *De Caccia*, to wit, "'the mere presence of printed matter on the paper is not fatal to the validity of an holographic will written thereon if such printed matter be not included or incorporated, directly or indirectly, in the will as written by the hand of the decedent.'" (59 Cal.2d at p. 683.) This was the correct governing rule, of course, but the court seems to have had some difficulty in applying it to the instrument presented in *Baker*.

In retrospect, that instrument was quite clearly valid under the precedents discussed herein. Obviously the words "MODESTO, CALIFORNIA" were not "directly" incorporated into the instrument by express reference, as were the filled-in printed clauses in *Bower* and in the present stationery-form case. And on the question of "indirect" incorporation, *Oldham* and *De Caccia* were persuasive authority. First, "The mere fact that the decedent placed the date immediately after and upon the exact line with the printed words in the instrument is not in itself sufficient to show that he thereby intended to make said printed words a part of said instrument." (*De Caccia*, at p. 726 of 205 Cal.) Nor does it much extend those decisions to hold that the additional fact that the testator crossed out some but not all of the printed letterhead—again, *before* writing any portion of the codicil[10]—is a circumstance "so slight that it would not warrant the conclusion that the deceased, by simply [failing to strike the entire letterhead] ... thereby intended to make such printed words any part of the document itself." (*Oldham*, at p. 620 of 203 Cal.) There being neither express nor implied incorporation of the words "MODESTO, CALIFORNIA," they should not have been "considered as any part of the will" within the meaning of section 53. The instrument was therefore valid.

Much of this reasoning does appear in the *Baker* opinion (see pp. 683-685 of 59 Cal.2d), and would have been sufficient to support the reversal. Unfortunately, the opinion also contains language, heavily relied on by the majority here, implying a rule that no printed matter on the face of a holographic instrument will be deemed incorporated therein within the meaning of the statute unless it is "relevant to its substance" or "essential to its validity as a will or codicil" (*id.* at p. 683). Again, in explaining why the decedent did not indirectly intend

---

[10]The *Baker* court itself emphasized this fact when it distinguished *Bower, Thorn*, and *Bernard* on the ground that in those cases "the printed or stamped matter came *after* the beginning of the handwritten portions but *above* the signature, and was incorporated or included in the handwritten provisions. We are presented with no such situation in the case at bench." (Italics in original.) (59 Cal.2d at p. 684.)

to incorporate the words "MODESTO, CALIFORNIA," the court stressed inter alia that such words were immaterial to the "validity of the document as a holographic will" and were irrelevant to the "dispositive meaning or adequacy of the codicil" (*id.* at p. 685).

The implication of this language is reinforced by the final sentence of the opinion, which states: "Any statements or implications contrary to the views herein stated, which appear in *Estate of Bower* (1938), *supra,* 11 Cal.2d 180, 184, are overruled." The only portion of the cited page of *Bower* (p. 184 of 11 Cal.2d) that the *Baker* court could possibly have been referring to is the statement that a printed exordium clause with blanks filled in by the decedent violates section 53 even though "such introductory written and printed matters are not essential to a testamentary document." (See fn. 5, *ante.*)

## A

While the court in *Estate of Christian* correctly understood the foregoing reference (see 60 Cal.App.3d at p. 980, fn. 1), it could not bring itself to draw the obvious conclusion: rather, it stated (at p. 982) that the quoted language of *Baker* "does *not* mean that a court can exclude as surplusage any provision not pertinent to the decedent's disposition of his property or essential to the validity of the document as a will." (Italics added.) It refused to believe this was the intent of *Baker* because "Such a rule would emasculate the statutory requirement that the will be *entirely* written in the testator's handwriting." (Italics added; *ibid.*) Although I believe the *Baker* language does imply such a rule, I sympathize with the dilemma of the *Christian* court and fully agree that adoption of the rule—the result of today's decision—will "emasculate" the requirements of section 53.

Professor Atkinson makes the latter point forcefully: criticizing cases that "have gone as far as holding that the testator's writing which filled in the blanks of a printed will form could be probated, though obviously he intended the printed words as part of his will," this distinguished scholar of probate law observes that one of the principal objections to the surplusage theory is that "it makes hash of the statute, especially if it requires that the will be *entirely* in the handwriting of the testator, . . ." (Italics in original.) (Atkinson on Wills (2d ed. 1953) p. 358; accord, 2 Page on Wills (Bowe-Parker rev. 1960) § 20.5, p. 288.)

In our statute, to be sure, that requirement is qualified by the exception added in 1931 for printed matter that is not "incorporated" in the

handwritten provisions of the will. But even the *Baker* court acknowledged (at p. 684 of 59 Cal.2d) that the 1931 amendment "merely codified the rule of the *De Caccia* case," i.e., that such printed matter will be deemed part of the will if the decedent expressly or impliedly intended to make it so. The majority, however, ignore the clear legislative history of the 1931 amendment, and narrowly redefine it to mean that printed matter will not be treated as "incorporated" unless it is either (1) essential to the validity of the will or (2) relevant to its dispositive provisions; if it is neither, the instrument will be deemed to have been written "entirely" by the hand of the decedent—regardless of the fact that the decedent deliberately included the printed matter in the will.

The majority dispose of the latter embarrassing fact in the case at bar by asserting that decedent here was "mistaken as to the necessity of using the printed language to make an effective will." (*Ante*, p. 885.) But this is a straw man: there is no showing that this decedent ever *believed* in the first place that her will would be invalid unless she filled in these printed clauses;[11] and because she did not in fact entertain such a belief —rather, she used the printed language simply as a convenience to spell out her wishes—she was obviously not "mistaken" in the sense now claimed by the majority. One cannot be mistaken about a belief one has never held.

In short, to achieve their ends the majority are compelled to ascribe a highly artificial meaning to the word "incorporated," and in effect to judicially delete the word "entirely" from the text of section 53.[12] As these are key terms in our law of holographic wills, I am in full agreement with Professor Atkinson that the majority's surplusage test "makes hash" of our statute.

---

[11]On the contrary, if she had so believed she would a fortiori have filled in the blank provided after the testimonium clause for her signature and "seal"; whatever their understanding of other provisions, most would-be testators believe they must at least *sign* a will for it to be valid. Yet decedent left that blank empty, a fact that I discuss in more detail below.

[12]This virtual deletion is made actual when the majority state that "Read literally, section 53 requires only that a holographic will be 'written, dated and signed' by the hand of the testatrix, and that printed matter not incorporated in the handwritten provisions not be considered as any part of the will." (*Ante*, p. 888.) "Read literally," of course, section 53 requires that a holographic will be "*entirely* written, dated and signed" by the hand of the testatrix. (See fn. 1, *ante*.) The omission is symbolic of the majority's disregard of the statute.

## B

I also agree with the second criticism that Professor Atkinson relates of the surplusage test, to wit, that "while the courts may carefully omit the nonholographic words on probate, they may be tempted to give them effect in the process of construction." (Atkinson on Wills, *supra*, p. 358.) We need look no further than the face of the majority opinion to find an example of this risk eventuating.

As noted, section 53 mandates that a holographic will be "signed by the hand of the testator himself." (Fn. 1, *ante.*) That statutory requirement refers to "the signature of the testator in his own handwriting written somewhere in or upon the document, with the intention by so writing it to *authenticate* the document. The name written at another place than the end of the document, and not for the purpose of authenticating it and indicating its completion, but merely to *identify* the person who is making the will, cannot be deemed to be a name 'signed' to the document" in the meaning of the law. (Italics added.) (*Estate of Manchester* (1917) 174 Cal. 417, 419 [163 P. 358].) Furthermore, "wherever placed, *the fact that it was intended as an executing signature must satisfactorily appear on the face of the document itself.* If it is at the end of the document, the universal custom of mankind forces the conclusion that it was appended as an execution, if nothing to the contrary appears. If placed elsewhere, it is for the court to say, from an inspection of the whole document, its language as well as its form, and the relative position of its parts, whether or not there is a positive and satisfactory inference from the document itself that the signature was so placed with the intent that it should there serve as a token of execution." (Italics added.) (*Id.* at p. 421; accord, *Estate of Bloch* (1952) 39 Cal.2d 570, 572-573 [248 P.2d 21].)

Here decedent did not sign her purported holographic will at the end thereof; the only point in the document at which she wrote her name was in the exordium clause. The majority declare "we deem this a sufficient 'signature'" (*ante*, p. 888), and rely on certain cases in which a holographic will has been held authenticated by a signature appearing only in the exordium or other introductory clause. (E.g., *Estate of Kinney* (1940) 16 Cal.2d 50 [104 P.2d 782]; *Estate of McMahon* (1917) 174 Cal. 423 [163 P. 669]; see also cases collected in *Bloch, supra*, at p. 574 of 39 Cal.2d.) The insuperable difficulty is that this decedent wrote her name in the exordium clause *not once but three times*, to wit, on each of the three pages of the holograph. In the absence of persua-

sive evidence to the contrary on the face of the instrument, I cannot believe decedent intended to take the highly unusual step of executing her will three separate times. Indeed, what evidence there is directly refutes any such inference. At the top of the second page of the document decedent wrote "Page 2 continued," but then added the small but very significant words, "*of* Last Will and Testament *by*," before inserting her name and place of residence. It is evident that such a clause is meant only to describe the nature of the document and identify its maker. When this disconcerting fact was called to appellant's attention in oral argument,[13] he shifted his ground and suggested that perhaps decedent intended instead to execute only the first and third pages of her will. Inasmuch as the introductory clauses of all three pages are otherwise essentially identical,[14] this argument is even less plausible than its predecessor.[15]

Equally importantly, in every case in which a holographic will has heretofore been held authenticated by a signature appearing only in the introductory clause—including those cited by the majority—that clause was "entirely written . . . by the hand of the testator" (Prob. Code, § 53). By contrast, except for decedent's name and residence the exordium clause on which the majority now rely consists entirely of *printed matter*. As noted above (part I B, *ante*), it has long been held that the proponent of a stationery-form will cannot be permitted to "edit" the instrument by deleting all the printed text and offering for probate only the handwritten interpolations; to do so would violate both the testator's intent and the plain language of the statute. (*Estate of Rand* (1882) *supra*, 61 Cal. 468, 475; accord, *In re Wolcott's Estate* (1919) *supra*, 180 P. 169, 171.)

The majority are thus impaled on a dilemma of their own making: to comply with the requirement of our statute that the will be "entirely" written by decedent, they disregard the three exordium clauses as surplusage; but to comply with the further statutory requirement that the

---

[13]The majority simply ignore the fact in their opinion.

[14]The only discrepancy is that on the third page decedent apparently tired of repeating the county and state of her residence, and so omitted them.

[15]Indeed, there is persuasive evidence on the face of the instrument that decedent intended not to execute it at all until a later date. In general her additions and deletions show both volition and good sense. In these circumstances, her failure to strike out the appropriate signature blank (i.e., the "(SEAL)" line) on each page—and particularly on the last page—demonstrates that she knowingly postponed her signing to a subsequent time.

will be "signed by the hand of the testator," they rely on the very same clauses. Manifestly they cannot have it both ways, and their attempt to do so merely emphasizes the insurmountable defects of the document here offered for probate.

## C

The third criticism of the "surplusage" test is voiced by a recent commentator on whom the majority rely. (Bird, *Sleight of Handwriting: The Holographic Will in California* (1981) 32 Hastings L.J. 605.) Professor Bird points out that in order to administer the test the courts will still need to determine on a case-by-case basis whether the particular printed matter on the face of the holographic will is "surplusage" in that instance or not, and that "What is surplusage to one court may be essential to another." (*Id.* at p. 629; fn. omitted.) The result, she concludes, is that the test "is not likely to eliminate litigation in jurisdictions adopting it." (*Id.* at p. 630; fn. omitted.)

Again we need look no further than the majority opinion to see why this criticism is valid. The majority extract "several separate inquiries" from their primary authority, *Estate of Baker*: "Was the particular provision relevant to the substance of the will? Was it essential to the will's validity? Did the testator intend to incorporate the provision? Would invalidation of the holograph defeat the testator's intent?" (*Ante,* p. 885.) The majority remind us that "these inquiries must not be undertaken mechanically" (*ibid.*); but if they believe that answers to these four questions—however unmechanical—will consistently and predictably identify which printed provisions of a holographic will are "surplusage," it is their turn to be mistaken.

To begin with, it is difficult to take the majority's third and fourth queries seriously. To ask whether the testator "intended to incorporate" the provision is to revive the intent test developed in the case law culminating in *De Caccia* and codified in the 1931 amendment to section 53 (see part I A, *ante*), but now rejected by the majority. And to inquire whether invalidation of the holograph would "defeat the testator's intent" borders on the tautological: in every case in which a purported but formally defective will is denied probate the maker's testamentary intent is obviously "defeated."

Nor can we expect much more help from the other two questions posed by the majority, despite their appearance of objectivity. What, in

fact, does it mean to ask whether the provision is "relevant to the substance" of the will? Elsewhere the majority define the "substance" of a will as its "dispositive provisions." (*Ante*, p. 885.) Yet that phrase is not a term of art, and reasonable men may differ as to its content. The majority imply that it includes only the provisions by which a testator "disposes" of his estate, i.e., by stating the names and shares of his beneficiaries. Most testators, however, make other "dispositions" in their wills that are no less significant to them and could equally be viewed as "relevant to the substance" of the instrument.

For example, probate lawyers would doubtless agree with the court in *Estate of Christian* that "the nomination of a personal representative to carry out the terms of a will is exceedingly important to a testator" (60 Cal.App.3d at p. 982), a fact of legal life that I find more persuasive than the majority's airy dismissal of this step as "patently irrelevant" to the substance of the will. (*Ante*, p. 885.) Because of the nature of his property or the questions of judgment and discretion involved in carrying out his wishes, the choice of who is to be his personal representative may well be of serious consequence to the testator; and having made that choice, he may believe it no less important to make further provisions relieving his representative of the statutory obligation to execute a bond (Prob. Code, § 541) or giving him such special powers as the authority to carry on the testator's business or to decide how particular assets are to be distributed among the beneficiaries (see, e.g., Cal. Will Drafting (Cont.Ed.Bar, 1965) §§ 16.25-16.40, pp. 578-585).

Again, when as often occurs the testator has minor children he may place great reliance on the provision by which he is permitted to nominate the person whom he wishes to serve as their guardian after his death, and to prescribe special powers and duties of that guardian. Indeed, "often the most important function of wills for a young married couple is the appointment of guardians of the person for their children." (*Id.*, § 10.13, p. 314.) But if this is the "most important function" of the will in such cases, surely reasonable men could view it as a disposition that is at least "relevant to the substance" of the instrument.

An even more fundamental point may be made. Professor Atkinson explains that "while wills usually dispose of property, this is not necessarily true; for example, a duly executed instrument which merely appoints a person to have charge of the property after the death is a will, although it contain no direction as to whom the decedent's property passes. Again a will may simply appoint a guardian for the maker's

children or merely revoke former wills. Instruments which have been intended to have testamentary effect have been considered to be wills though they make no effective disposition of property." (Fns. omitted; Atkinson on Wills, *supra*, pp. 2-3.) But if the majority's narrow meaning of the word were exclusive, these wills would have no "substance" at all. Rather than reach such an absurd result, reasonable men could conclude that some provisions of a holographic will in addition to those disposing of the testator's property may be "relevant to the substance" of the instrument. The "surplusage" test, unfortunately, does not tell us what they are.

Finally, even the majority's query whether the provision is "essential to the validity" of the will fails to meet the objection of uncertainty. Under Probate Code section 53 (fn. 1, *ante*), the three formal requirements of a valid holographic will are, of course, that it be "entirely written, dated and signed by the hand of the testator himself." It is clear that a handwritten date and signature are provisions "essential to the validity" of such a will. But as we have seen, the initial requirement of the statute that the will be "entirely written" by the hand of the testator may or may not be violated by a printed provision appearing on its face: under the 1931 amendment, the answer depends on whether or not it is "incorporated" in the handwritten portion of the instrument. Accordingly, to ask whether a particular printed provision other than the date or signature is "essential to the validity" of the will in a specific case is to beg the question: it is "essential" if it is incorporated, and it is not "essential" if it is not. In most instances, therefore, the apparent objectivity of the inquiry is an illusion.

For all the foregoing reasons I would not adopt the "surplusage" test of the present majority into the law of California. Rather, applying the settled rules of statute and case law discussed above (part I, *ante*), I would affirm the order denying probate to the hybrid document offered here as a holographic will.

Newman, J., and Kaus, J., concurred.

Respondent's petition for a rehearing was denied March 31, 1982. Mosk, J., and Kaus, J., were of the opinion that the petition should be granted.